Angelo J. Genova
Rajiv D. Parikh
Michael C. McQueeny
Michael Mondelli
AGenova@genovaburns.com
RParikh@genovaburns.com
mmcqueeny@genovaburns.com
mmondelli@genovaburns.com
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112

Marc E. Elias*
Emily R. Brailey*
Sarah R. Gonski*
Mary N. Beall*
MElias@perkinscoie.com
EBrailey@perkinscoie.com
SGonski@perkinscoie.com
MBeall@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200


[*additional counsel listed on signature page*]


*Counsel for DCCC*

*\* Motion for admission pro hac forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; REPUBLICAN NATIONAL COMMITTEE; NEW JERSEY REPUBLICAN STATE COMMITTEE,<br><br>                Plaintiffs,<br><br>     v.<br><br>PHILIP D. MURPHY, in his official capacity as Governor of New Jersey; TAHESHA WAY, in her official capacity as Secretary of State of New Jersey,<br><br>                Defendants,<br><br> and<br><br> DCCC,<br><br> Proposed Intervenor-Defendants. | Case No. 3:20-cv-10753-MAS-ZNQ |

---

**BRIEF IN SUPPORT OF DCCC'S MOTION TO INTERVENE**

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................2

ARGUMENT ............................................................................................2

   I.    DCCC is entitled to intervene as of right.....................................3

      A.  The motion to intervene is timely.............................................3

      B.  DCCC has significant protectible interests in this action that will  be impaired without intervention. ....................................4

      C.  Intervenors' interests are not adequately represented by the  existing parties.......................................................7

  II.   DCCC is also entitled to permissive intervention.........................9

CONCLUSION .......................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*,
 309 F.R.D. 191 (D.N.J. 2015)................................................................3

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
 647 F.3d 893 (9th Cir. 2011) ................................................................8

*Crawford v. Marion Cnty. Election Bd.*,
 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008)....................5

*Daunt v. Benson, et al.*,
 No. 1:20-cv-522-RJJ-RSK (W.D. Mich. June 9, 2020) ......................8

*Democratic Nat'l Comm. v. Reagan*,
 329 F. Supp. 3d 824 (D. Ariz. 2018), *rev'd on other grounds sub
 nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir.
 2020) (en banc) ....................................................................................6

*Donald J. Trump for President, et al., v. Cegavske*,
 No. 2:20-cv-01445-JCM-VCF (D. Nev. Aug. 4, 2020) ......................8

*Donald J. Trump for President, Inc., et al., v. Boockvar, et al.*,
 No. 2:20-cv-966-NR (W.D. Pa. June 29, 2020) ..................................8

*Fund for Animals, Inc. v. Norton*,
 322 F.3d 728 (D.C. Cir. 2003)..............................................................8

*Kleissler v. U.S. Forest Serv.*,
 157 F.3d 964 (3d Cir. 1998) .............................................................4, 8

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
 72 F.3d 361 (3d Cir. 1995) ...............................................................3, 7

*N.C. State Conf. of NAACP v. McCrory*,
 997 F. Supp. 2d 322 (M.D.N.C. 2014), *aff'd in part, rev'd in part
 on other grounds sub nom. League of Women Voters of N.C. v.
 North Carolina*, 769 F.3d 224 (4th Cir. 2014) ....................................6

*Ohio Org. Collaborative v. Husted*,
 189 F. Supp. 3d 708 (S.D. Ohio 2016), *rev'd on other grounds sub
 nom. Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir.
 2016) ....................................................................................................6

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Owen v. Mulligan*,
   640 F.2d 1130 (9th Cir. 1981) ............................................................................6

*Paher v. Cegavske*,
   No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr.
   28, 2020) ............................................................................................................9

*Republican Nat'l Comm., et al., v. Newsom, et al.*,
   No. 2:20-cv-01055-MCE-CDK (E.D. Cal. May 24, 2020) ................................8

*Tex. Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) ..............................................................................6

*The Republican State Comm. of Del., et al., v. Del., et al.*
   (Del. Ch. Aug. 19, 2020) ....................................................................................8

*Town of Chester v. Laroe Ests., Inc.*,
   137 S. Ct. 1645 (2017)........................................................................................5

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)............................................................................................7

## OTHER AUTHORITIES

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................9

Fed. R. Civ. P. 24(b)(3)................................................................................................9

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, DCCC moves to intervene as a defendant in this case.

Plaintiffs Donald J. Trump for President, Inc., Republican National Committee, and the New Jersey Republican State Committee (collectively, the "Republican Party") challenge the elections plans instituted by Defendants Philip Murphy, the Governor of New Jersey, and Tahesha Way, the Secretary of State of New Jersey (together, "the State"), for the November 3, 2020 general election. The State's decision to implement a primarily all-mail system for the election is both reasonable and constitutionally required, in light of the otherwise severe impediments to voting posed by the COVID-19 global pandemic. The Republican Party alleges a slew of claims in an attempt to undermine the State's effort to protect New Jersey voters during an unprecedented public health crisis. In so doing, they pose a clear and direct threat to DCCC's rights and legal interests.

For the reasons set forth below, DCCC is entitled to intervene in this case as a matter of right under Rule 24(a)(2). DCCC must be permitted to participate to safeguard its substantial and distinct legal interests, which otherwise will not be represented in this litigation. In the alternative, DCCC should be granted permissive intervention under Rule 24(b). In compliance with Rule 24(c), a proposed Answer is attached as Exhibit 1.

## BACKGROUND

In response to the unprecedented health crisis dominating headlines and impacting daily lives across the globe, the Governor proclaimed a state of emergency on March 9, 2020. *See* Compl., ECF No. 1 ("Compl."). Five months later, in an effort to both protect and assist voters during the pandemic, the Governor issued Executive Order 177 ("EO 177") on August 14. *Id.* at ¶ 66. Among other provisions, EO 177 requires that "The November General Election shall be conducted primarily via vote-by-mail ballots, which will be sent to all 'Active' registered voters without the need for an application to receive a vote-by-mail ballot." *Id.* at 6. The distribution of mail ballots will be accompanied by meaningful opportunities to vote in person. *See* Exec. Order No. 177 (Aug. 14, 2020), available at https://bit.ly/30ZjBaj (last visited Aug. 21, 2020).

On August 18, the Republican Party filed this action seeking to invalidate EO 177 and block the Governor's entirely appropriate and prudent efforts to safeguard the right to vote of New Jersey voters in this unprecedented pandemic.

## ARGUMENT

Under the Federal Rules of Civil Procedure, there are two bases for intervention: intervention as of right pursuant to Rule 24(a) or permissive intervention pursuant to Rule 24(b). DCCC's intervention in this litigation is supported under both grounds.

## I.     DCCC is entitled to intervene as of right.

DCCC satisfies each of the four requirements under Federal Rule of Civil Procedure 24(a) to intervene as a matter of right. Under that rule, a proposed party must demonstrate that: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citation omitted). Courts "liberally construe Rule 24(a) in favor of intervention." *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015) (quotations and alterations omitted). DCCC satisfies all four elements here and should be granted intervention as of right.

### A.     The motion to intervene is timely.

DCCC's motion is timely. Courts in the Third Circuit weigh three factors in determining timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo.*, 72 F.3d at 369. The Republican Party initiated this action on August 18, and DCCC files this motion just days later, before any significant action in the case. There has been no delay, and there is no possible risk of prejudice to the other parties. *See id.* at 370 (finding intervention was timely despite four-year delay because no

significant action had occurred on case).

**B.    DCCC has significant protectible interests in this action that will be impaired without intervention.**

DCCC has significant protectible interests in this lawsuit that will be impaired by the Republican Party's causes of action, should it be successful. In examining whether a proposed intervenor's interests are sufficient to support intervention, courts in the Third Circuit take a pragmatic approach, observing that the "central purpose" of the requirement is "to allow intervention by those who might be practically disadvantaged by the disposition of the action." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998). Noting that the outcomes plaintiffs seek in suits against government entities can "have an immediate and deleterious effect on other individuals and entities," the Court has emphasized that "[r]ather than barring access to these parties, Rule 24 allows the court to give them the opportunity to present their positions." *Id.* at 971. "Evenhandedness is of paramount importance." *Id.*.

The Republican Party's challenges to the State's plan to conduct the general election primarily by mail compromises DCCC's legally protectible interests. Without the State's actions to ensure that New Jersey voters are not disenfranchised as a result of the pandemic, many will be forced to choose between risking their health to vote and exercising their right to the franchise. If the Republican Party succeeds and the State's plans to mail ballots to registered voters are thwarted, many

of those voters—including significant numbers who would have supported Democratic candidates—will effectively lose their ability to vote in the coming election. As the official congressional committee of the national Democratic Party dedicated to ensuring the election of Democrats to U.S. Congress (including specifically in New Jersey), this directly, severely, and irreparably harms DCCC in at least two ways: first, it will make it more difficult for DCCC to elect their candidates to office, because it will suppress the vote of countless voters who would have otherwise cast ballots in support of those candidates; and second, it will cause DCCC to have to divert resources that it otherwise could have expended on other mission-critical efforts, but will now have to expend to address the lack of readily available mail ballots. DCCC also has a cognizable interest in asserting the rights of their members and the voters who associate with the Party who will lose or have their ability to cast ballots unduly burdened, as well as the interests of the candidates who they support, who will suffer similar injuries to their electoral prospects.

Each of these injuries independently constitutes a sufficient injury to confer Article III standing on intervenors, which goes beyond the requirement needed for intervention under Rule 24(a)(2) in this case. *See, e.g.*, *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) (noting an intervenor by right only needs "Article III standing in order to pursue relief that is different from that which is sought by a party with standing"); *see also Crawford v. Marion Cnty. Election Bd.*,

472 F.3d 949, 951 (7th Cir. 2007) ("The Democratic Party [] has standing to assert the rights of those of its members who will be prevented from voting by the new law" and that the law "injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"), *aff'd*, 553 U.S. 181 (2008); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing "harm to [] election prospects" constitutes "a concrete and particularized injury"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding "the potential loss of an election" is sufficient injury to confer Article III standing); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations…to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *Ohio Org. Collaborative v. Husted*, 189 F. Supp. 3d 708, 726 (S.D. Ohio 2016) (political party "established an injury in fact" where "the challenged provisions will make it more difficult for its members and constituents to vote"), *rev'd on other grounds sub nom. Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016); *N.C. State Conf. of NAACP v. McCrory*, 997 F. Supp. 2d 322, 342 (M.D.N.C. 2014) (political party has "direct, particularized interest in the outcome of an election"), *aff'd in part, rev'd in part on other grounds sub nom. League of Women Voters of*

*N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014).

### C.    Intervenors' interests are not adequately represented by the existing parties.

DCCC cannot rely on the State to adequately represent their interests. DCCC's burden to show inadequate representation is minimal; it need only show that representation of its interests "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Mountain Top Condo*, 72 F.3d at 323. When making its determination, the Court compares DCCC's interests to the interests of the State. *Mountain Top*, 72 F.3d at 323. To be sure, DCCC shares some of the State's interests in this litigation—namely, in ensuring that New Jersey preserves its ability to enact and implement much-needed changes to its election structure in light of unprecedented global chaos.

But DCCC has other significant interests not shared by any other party in this litigation. It is crucial to DCCC's core mission to ensure that each of its affiliated candidates has a robust base of support and that their members in New Jersey have a meaningful opportunity to cast a ballot. If the Republican Party successfully obstructs the State's efforts to expand access to mail voting in light of the COVID-19 pandemic, then DCCC will have to spend more money on voter education and get out the vote campaigns in New Jersey in order to boost turnout to make up for the voters disenfranchised as a result of the Republican Party's efforts here and attempt to ameliorate that harm in ways that DCCC would not otherwise have to do

7

if EO 177 were in force.

Additionally, DCCC can offer particular insight into the Republican Party's national strategy, because this lawsuit is only one of many cases that it has recently brought to obstruct states' efforts to ensure a fair and equal election during a global pandemic. *See, e.g.*, *Donald J. Trump for President, et al., v. Cegavske*, No. 2:20-cv-01445-JCM-VCF (D. Nev. Aug. 4, 2020) (ECF No. 1); *Republican Nat'l Comm., et al., v. Newsom, et al.*, No. 2:20-cv-01055-MCE-CDK (E.D. Cal. May 24, 2020) (ECF No. 1); *Donald J. Trump for President, Inc., et al., v. Boockvar, et al.*, No. 2:20-cv-966-NR (W.D. Pa. June 29, 2020) (ECF. No. 4); *The Republican State Comm. of Del., et al., v. Del., et al.*, (Del. Ch. Aug. 19, 2020); *Daunt v. Benson, et al.*, No. 1:20-cv-522-RJJ-RSK (W.D. Mich. June 9, 2020) (ECF No. 1). DCCC has successfully intervened in many of these cases and has experience defending against the Republican Party.

No other party to this litigation can defend against the Republican Party's national litigation strategy like DCCC can. As government actors who are only participating in a single case, the State lacks the national perspective and cannot adequately represent DCCC's interests here. *See Kleissler*, 157 F.3d at 972-74; *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be

'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *cf. Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (concluding "Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where they "may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"). And although the Atlantic County Democratic Committee has moved to intervene, it likewise does not adequately represent the DCCC's interests; DCCC's interests are statewide and not limited to the specific circumstances of Atlantic County voters.[1]

## II.    DCCC is also entitled to permissive intervention.

Even if this Court were to find DCCC ineligible for intervention as of right, DCCC readily satisfies the requirements for permissive intervention under Rule 24(b). Permissive intervention is appropriate where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[1] The Atlantic County Democratic Committee sought intervention as amicus on August 20, 2020. ECF No. 9.

9

For the reasons discussed above, this motion is timely, and DCCC cannot rely on the State or other proposed intervenors to adequately protect its interests. DCCC also has defenses to the Republican Party's claims that share common questions of law and fact. For example, DCCC contends that the State acted lawfully when it issued plans to make voting easier for New Jersey voters in light of the pandemic. And significantly, intervention will result in neither prejudice nor undue delay. DCCC has an undeniable interest in a swift resolution of this action, to ensure that the State has sufficient time to allow every New Jersey voter to cast a ballot in the election, and to allow it time to conduct its own voter education and turnout efforts. Given the legal and factual shortcomings of the Republican Party's claims, DCCC is confident that their intervention in this case, and the filings that will follow, will result in expeditious resolution of this litigation.

## CONCLUSION

For the reasons stated above, DCCC respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit it to intervene under Rule 24(b).

DATED:  August 24, 2020

By: _s/ Rajiv D. Parikh_____

GENOVA BURNS LLC
Angelo J. Genova
Rajiv D. Parikh
Michael C. McQueeny
Michael Mondelli
AGenova@genovaburns.com
RParikh@genovaburns.com
mmcqueeny@genovaburns.com
mmondelli@genovaburns.com
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112

Marc E. Elias*
Emily R. Brailey*
MElias@perkinscoie.com
EBrailey@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Fax: 202.654.6211

Sarah R. Gonski*
SGonski@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Fax: 602.648.7037

Mary N. Beall*
MBeall@perkinscoie.com
PERKINS COIE LLP
33 E. Main St., Ste 201

11

Madison, WI 53703-3095
Telephone: 606.294.4001
Fax: 608.663.7499

*Attorneys for DCCC*

*\*Application for pro hac vice forthcoming*