**Exhibit 1**







**Exhibit 2**

 health

• **LIVE TV**        

**Mourners pay their respects to Justice Ruth Bader Ginsburg as her body lies in repose at the Supreme Court**    ✕



**NOW PLAYING**
US coronavirus death toll passes 200,000
CNN

 **200,000 people have died from Covid-19 in the US. That's more than the US battle deaths from 5 wars combined**

By Holly Yan, CNN

Graphics by Shane Csontos-Popko, CNN

Updated 1:34 PM ET, Tue September 22, 2020

**(CNN)** — What happened today seemed impossible to many Americans six months ago.

When Dr. Anthony Fauci predicted in March that Covid-19 could kill 200,000 people in the US, skeptics lambasted him and accused him of fearmongering.

But Fauci was right. And the US reached that bleak milestone much earlier than some experts predicted.

Case 3:20-cv-10753-MAS-ZNQ Document 58-29 Filed 09/25/20 Page 5 of 57 PageID: 1250

 health

● **LIVE TV**  

## US **Covid-19** deaths are equal to having the 9/11 attacks every day for

# 66 days

Source: New York City medical examiner's office, National Park Service, US Department of Defense

Since the first known US Covid-19 death on February 6, an average of more than 858 people have died from the disease every day.

Many of those victims died without loved ones in hospital rooms. Countless others never had a proper funeral, with mourners grieving remotely online.

## Since the first known US **Covid-19** death on February 6, an average of

# 858+ deaths

## have been caused by the disease every day.

Source: Santa Clara County (California) heath officials and Johns Hopkins University



health

● LIVE TV  

What happens next with the pandemic largely depends on personal responsibility and how much Americans are willing to fight this battle together.



**Sign up for the Results Are In Newsletter**

Get the latest expert advice to live
a healthier and happier life

Sign Me Up

No, Thanks

By subscribing you agree to our Privacy Policy

Already, Covid-19 has killed more people in the US than Americans killed in battle during the five most recent wars combined: the Korean War, the Vietnam War, the Iraq War, the War in Afghanistan and the Persian Gulf War.



  

US death toll from **Covid-19** is

# 109x higher

than the effects from Hurricane Katrina.

Source: NOAA

And researchers project almost 180,000 additional Covid-19 deaths by January 1.

But it doesn't have to be that way.

"Increasing mask use to 95% can save nearly 115,000 lives, reducing that expected number of deaths by 62.7%," the IHME said.

And the same mask wearing, physical distancing and hand washing that protect against Covid-19 can also help avert a flu-and-coronavirus "twin-demic" that could overwhelm the health care system.

"We have to stay strong and do the things that could decrease the spread," said pediatrician Dr. Brett Giroir, the White House coronavirus task force's testing czar.

"Number 1: Wearing a mask when we can't physically distance. Number 2: Avoiding crowds. Number 3: Hygiene. And with smart testing, we can flatten the curve and slow the spread," Giroir said.

"We do have a formula to reduce the deaths, reduce the cases. But we all have to be disciplined and diligent to make sure we obey that every single day."

*CORRECTION: This story has been updated to correct Covid-19's ranking among causes of death in the US, according to the latest available CDC data. It is currently third.*



● LIVE TV

recent wars

Covid-19 has killed more than 200,000 people in the United States. The death toll has surpassed the number of American combat deaths in the country's five most recent wars combined.



Note: Battle deaths include those killed in action or as the result of a wound. They do not include accidental deaths, homicides, suicides or illness-related deaths.
*Afghanistan deaths are as of July 16, 2020.

The loss of life is like suffering the effects of 109 Hurricane Katrinas. Or enduring the 9/11 attacks every day for 66 days.

**Exhibit 3**

# The Washington Post

*Democracy Dies in Darkness*

# Experts project autumn surge in coronavirus cases, with a peak after Election Day

By **Joel Achenbach** and **Rachel Weiner**

September 5, 2020 at 9:00 a.m. EDT

**PLEASE NOTE**

The Washington Post is providing this important information about the coronavirus for free. For more, sign up for our daily Coronavirus Updates newsletter where all stories are free to read. To support this work, please subscribe to the Post.

Infectious-disease experts are warning of a potential cold-weather surge of coronavirus cases — a long-feared "second wave" of infections and deaths, possibly at a catastrophic scale. It could begin well before Election Day, Nov. 3, although researchers assume the crest would come weeks later, closer to when fall gives way to winter.

An autumn surge in covid-19, the disease caused by the novel coronavirus, would not be an October surprise: It has been hypothesized since early in the pandemic because of the patterns of other respiratory viruses.

"My feeling is that there is a wave coming, and it's not so much whether it's coming but how big is it going to be," said Eili Klein, an epidemiologist at Johns Hopkins University School of Medicine.

The pandemic is already a dominant campaign issue, and it's not clear that even a spike in deaths would apply much torque to the presidential race. Outbreaks in some states could also bring pressure further down the ballot and conceivably affect turnout if there is so much community spread that voters who planned to cast ballots in person feel unsafe going to the polls.

The warnings from researchers come at a moment when, despite a rise in cases in the Upper Midwest, national numbers have been trending downward at a slow pace for several weeks following the early-summer surges in the Sun Belt.

Respiratory viruses typically begin spreading more easily a couple of weeks after schools resume classes. Although the pandemic has driven many school districts to remote learning, there is a broad push across the country to return to something like normal life.

The Labor Day holiday weekend is a traditional time of travel and group activities, and, like Independence Day and

Support journalism you can trust when it matters most. **Get one year for $29**

The coronavirus has a relatively long incubation period, and the disease progression in patients with severe illnesses also tends to be drawn out over several weeks. As a result, any spike in deaths will lag weeks behind a spike in infections. And the infection surges have consistently followed the loosening of shutdown orders and other restrictions.

A model produced by the University of Washington's Institute for Health Metrics and Evaluation and published Friday forecasts a "most likely" daily death toll of 1,907 on Election Day, roughly double the current toll. Under the IHME forecast, the numbers would continue to rise until early December, peaking at more than 2,800 deaths daily.

By year's end, 410,000 people in the United States will have died under the model's most-likely scenario. That's more than double current fatalities. The model also produced best-case and worst-case scenarios — ranging from 288,000 to 620,000 deaths by Jan. 1 — depending on the degree to which people wear masks, adhere to social distancing and take other precautions.

"I firmly believe we will see distinct second waves, including in places that are done with their first waves. New York City, I'm looking at you," said Andrew Noymer, an epidemiologist at the University of California at Irvine who studied the October surge in cases when the mild pandemic influenza virus circulated in 2009.

"I expect fall waves starting in mid-October and getting worse as fall heads into winter, and reaching a crescendo certainly after the election," he said. "Some places will peak around Thanksgiving, some places will peak around Christmas, some places not until January and February."

If that's correct, the worst impacts will occur after the campaigning is over and the ballots have been cast. The exact timing is unlikely to be a political factor, contended David Rubin, the director of PolicyLab at Children's Hospital of Philadelphia, who said that most people have already made judgments about the candidates' handling of the pandemic.

"I wouldn't foresee anything happening between now and the election that would change the dynamics of the election," Rubin said.

President Trump's approval rating has been remarkably consistent through the pandemic, noted Kyle Kondik of the University of Virginia Center for Politics. Though Trump lost some ground in May and June, he is no less popular than he was last fall, when the economy was strong and people could travel freely.

"There has been a little bit of erosion, but not a ton," Kondik said. Of course, in a close election, even a small shift "could be a difference between victory and defeat."

Rubin raised another possible consequence of increased viral transmission in advance of the election: Candidates could become sick.

"The candidates are campaigning. They're mixing with people," Rubin said. "I would not be surprised to see a couple people get sick, and whether that goes all the way to the presidential candidates could be a game changer. This virus has got pretty close to the president a couple of times."

The timing of the pandemic remains unpredictable in part because it is not yet a seasonal virus. Seasonal viruses, such as those that cause influenza, and the coronaviruses that cause common colds, are remarkably faithful to the calendar, with most typically flaring in the fall a couple of weeks after children go back to school and start bringing their newly

acquired infections into their homes, said Ellen Foxman, an immunologist at the Yale School of Medicine and expert on respiratory viruses.

But most people still have no immunity to the novel coronavirus. It spreads opportunistically in all kinds of weather. Despite millions of infections and more than 184,000 deaths, most people in the United States remain susceptible.

"A pandemic virus is different, because most of us do not have prior immunity to this virus," Foxman said. "That means it's a lot more contagious than a typical virus that we get every year."

There is a small body of evidence that a person who gets the virus acquires a limited amount of immunity. And there also are indications that some people can become infected a second time.

It's possible that some people suffer minimal or no effects from the coronavirus because of exposure to other viruses, which prime the body's immune system against pathogens generally. This is seen as one plausible explanation for the unusual percentage of people — the Centers for Disease Control and Prevention estimates 40 percent — who become infected with the novel coronavirus but are asymptomatic. But there still is no approved vaccine. Most experts do not expect one to be distributed, at least in any significant numbers, before the end of the year at the earliest, and broad distribution could take many months.

Meanwhile, the country's health departments are reporting roughly 40,000 positive test results every day — more than double the number in May when many states began reopening after the first wave of infections. Epidemiologist Jeffrey Shaman of Columbia University said a good target for the entire country would be to drive transmission down to 500 infections a day. At that level, contact tracing and testing could keep outbreaks under control.

"The question is, is it going to spread out of control broadly?" Shaman said. "Are we going to get us down to 10,000 cases, then under 1,000, and then to my magical number of 500? The thing about this disease, it really spins out of control."

Klein, the Hopkins epidemiologist, warns the fall wave is likely to be more intense than the peak in the spring. Maryland had 2,000 covid-19 patients in hospitals at its peak in April, he said, and his midrange scenario envisions twice that many hospitalized patients at the next peak.

At Hopkins, doctors are discussing what they call "Surge 2.0." They are envisioning outbreaks that could potentially overwhelm hospitals with covid-19 patients. Even less catastrophic surges could hamper other kinds of non-covid-19 medical care, said Lisa Lockerd Maragakis, an associate professor of medicine and infectious diseases.

"Even though we have had so many cases and we have had so many tragic deaths, we have the vast majority of people who are not immune to this virus," Maragakis said. "Without a therapeutic or a vaccine, we are still in a position where the transmission of the virus depends heavily on our behaviors every day."

That is a common refrain among those working around-the-clock to understand this pandemic.

"We are collectively in control of how many cases or deaths there are," Marc Lipsitch, an epidemiologist at Harvard, said in an email. "Forecasts more than a month from now make sense only if they are conditional on how we behave."

"People's behavior is a dramatic determinant here," said Christopher Murray, the director of IHME. "Look at what happened in Florida [after the spike in cases]. People got scared. They started wearing masks, they stopped going to bars."

But the converse is also true: If people stop being vigilant, the virus bounces back.

Updated September 24, 2020

## Coronavirus: What you need to read

The Washington Post is providing some coronavirus coverage free, including:

**The latest:** Live updates on coronavirus

**Coronavirus maps:** Cases and deaths in the U.S. | Cases and deaths worldwide

**What you need to know:** Vaccine tracker | Coronavirus etiquette | Summertime activities & coronavirus | Hand sanitizer recall | Your life at home | Personal finance guide | Make your own fabric mask | Follow all of our coronavirus coverage and sign up for our free newsletter.

**How to help:** Your community | Seniors | Restaurants | Keep at-risk people in mind

**Asked and answered:** What readers want to know about coronavirus

Have you been **hospitalized for covid-19**? Tell us whether you've gotten a bill.

Sign in to join the conversation

**Exhibit 4**

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT


**UNITED STATES**
**POSTAL SERVICE**

May 29, 2020

Re:  Election Mail

Due to the impacts of the COVID-19 pandemic, the Postal Service anticipates that many voters will choose to use the mail to participate in upcoming elections, including the 2020 General Election in November.  This letter is a follow-up communication to the 2020 Official Election Mail Kit (Kit 600), which was provided to elections officials in March and which is available at https://about.usps.com/kits/kit600.pdf.

Following up on several topics addressed in that Election Mail Kit, this letter highlights some key aspects of the Postal Service's delivery processes, to allow you to take those processes into account when making decisions and when educating the public on what to expect when using the mail to vote.  You will also find some additional recommendations that the Postal Service has regarding how to ensure the efficient and timely handling of mail pertaining to elections (which includes ballots as well as registration cards, absentee-ballot applications, polling-place notifications, or other materials sent from authorized election officials to allow citizens to participate in the voting process, and is collectively referred to as "Election Mail").  These and other issues are discussed in the above mentioned Election Mail Kit and in Publication 632, *State and Local Election Mail – User's Guide*, which is enclosed to this letter.  Publication 632 and other Election Mail resources are available on the Postal Service's Election Mail website at https://about.usps.com/election-mail/election-mail-resources.htm.

**How Election Mail can be Sent**

As an initial matter, the Postal Service offers a variety of mailing services that voters and election officials may utilize to transmit Election Mail.  The two main classes of mail that are used for Election Mail are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate.  These mail classes have different delivery standards and price ranges, and are subject to eligibility requirements that include the volume of a given mailing and the mailpiece's contents, weight, and size.  As a general matter, all Election Mail (including ballots) mailed from individual voters to state or local election officials *must* be sent by First-Class Mail.  Election materials (including blank absentee ballots) mailed from state or local election officials to voters may generally be sent by either First-Class Mail or Marketing Mail.

**Mail Processing Times Need to be Considered when Communicating Deadlines**

It is important to note that First-Class Mail and Marketing Mail have different delivery standards, and that delivery times further depend on the origin and destination of a given mailpiece.  Most domestic First-Class Mail is delivered in 2-5 days.  Most domestic Marketing Mail is delivered in 3-10 days.  *However, the Postal Service cannot guarantee a specific delivery date or alter standards to comport with individual state election laws.*

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
PHONE: 202-268-5555
FAX: 202-268-6981
THOMAS.J.MARSHALL@USPS.GOV
www.usps.com

To account for delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), voters should mail their return ballots at least 1 week prior to the due date established by state law. Similarly, for election materials (such as blank ballots) sent to voters, the Postal Service also recommends that state or local election officials use First-Class Mail and allow 1 week for delivery to voters.

It is critical that the Postal Service's delivery standards be kept in mind when informing voters how to successfully participate in an election using the mail, and when state and local election officials are making decisions as to the establishment of deadlines and the means used to send a piece of Election Mail to voters. Voters should be made aware of these transit times when offered the opportunity to request that an absentee ballot be mailed to them, and when deciding when to mail a ballot back to election officials. For example, if a state law requires completed ballots to be received by election officials by a specified date (such as Election Day) in order to be counted, voters should be aware of the possibility that completed ballots mailed less than a week before that date may not, in fact, arrive by the state's deadline. Similarly, if a state law allows a qualified voter to request an absentee ballot shortly before Election Day and requires the state or local election official to mail that ballot to the voter, voters should be made aware that the absentee ballot may not reach the voter before Election Day if requested less than a week before the election.

**Proper Labeling Helps Avoid Delivery Delays and Increases Mailpiece Visibility**

The Postal Service is committed to the efficient and timely processing and delivery of Election Mail in accordance with its delivery standards, and has developed labeling to provide greater visibility for these mailpieces during processing, including the Official Election Mail logo, which is used on all Election Mail, and Tag 191, *Domestic and International Ballots*, which is used specifically for ballots. Neither Tag 191 nor the Official Election Mail logo is mandatory, and they do not upgrade service or substitute for postage, but they help to alert the Postal Service of the presence of Election Mail in the postal network and distinguish Election Mail from the millions of other mailpieces that are moving through the network.

The Postal Service further recommends that election officials use Intelligent Mail barcodes for their Election Mail. These barcodes are used to improve a mailer's ability to track individual mailpieces and gain greater mailstream visibility. The Postal Service also offers an Intelligent Mail barcode identifier specifically for ballots that increases mailpiece visibility within the processing system, is used by the Postal Service to sort individual mailpieces, and can be used both by the Postal Service and by the mailer to track the delivery and return of ballots.

**Consult with Election Mail Coordinators BEFORE Printing Mailpieces**

In addition, the Postal Service has assigned election mail coordinators to each locality that stand ready to assist and consult with state and local election officials concerning the logistics of their mailings and the services that are available. A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/political-election-mail-coordinators.pdf. Also, mailpiece design analysts will assist election officials in designing and preparing envelopes that are consistent with postal regulations, increase

- 3 -

mailpiece visibility, facilitate the application of postmarks, and allow officials to receive available postage discounts.  You may reach a mailpiece design analyst by calling the MDA Customer Service Help Desk at 855-593-6093 (between 8 a.m. and 5 p.m. Central Time, Monday through Friday) or by sending an email to *MDA@usps.gov*.  Mailpieces that do not adhere to the Postal Service's requirements may experience longer processing times or other delivery problems.  To avoid incurring delivery delays and unnecessary costs, the Postal Service strongly recommends that state and local election officials work with the Postal Service *before* designing and printing any mailpieces for use in elections.

This letter, which has been sent to local and state election officials around the country, is part of a broader outreach effort aimed at educating all interested parties about the Postal Service's mailing requirements and services.  The Postal Service is proud of its role as an important component of the nation's democratic process and it remains committed to providing the resources needed to implement a successful election season.

Thomas J. Marshall

Enclosure

**Exhibit 5**


**UNITED STATES**
**POSTAL SERVICE**

July 8, 2020

Camden County BOE
100 University Ct
Blackwood NJ 08012

Dear Camden County BOE,

This letter serves as confirmation of the Postal Service's understanding that ballots delivered to election officials in New Jersey on July 8, 2020, with a postmarked date of July 8, 2020, were received by the Postal Service on or before July 7, 2020.

On the morning of July 8, 2020, the Postal Service's Eastern and Northeast Areas became aware of a number of ballots located at Postal Service delivery units for the July 7th New Jersey primary election that did not have postmarks. These ballots were postmarked at the delivery units with a July 8, 2020, date and were subsequently delivered to election officials on July 8.

Based on the Postal Service's operational processes, we believe ballots located at a delivery unit on the morning of July 8, and delivered later that same day, would have been received by the Postal Service on or before July 7, 2020.

Thank you,

John Glenn
Postmaster Blackwood

**Exhibit 6**

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT


**UNITED STATES**
**POSTAL SERVICE**

July 30, 2020

Honorable Tahesha Way
New Jersey Secretary of State
P.O. Box 300
Trenton, NJ 08625

Dear Secretary Way:

Re:  Deadlines for Mailing Ballots

With the 2020 General Election rapidly approaching, this letter follows up on my letter dated May 29, 2020, which I sent to election officials throughout the country.  That letter highlighted some key aspects of the Postal Service's delivery processes.  The purpose of this letter is to focus specifically on the deadlines for requesting and casting ballots by mail.  In particular, we wanted to note that, under our reading of New Jersey's election laws, certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards.  This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them.

As I stated in my May 29 letter, the two main classes of mail that are used for ballots are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate.  Voters must use First-Class Mail (or an expedited level of service) to mail their ballots and ballot requests, while state or local election officials may generally use either First-Class Mail or Marketing Mail to mail blank ballots to voters.  While the specific transit times for either class of mail cannot be guaranteed, and depend on factors such as a given mailpiece's place of origin and destination, most domestic First-Class Mail is delivered 2-5 days after it is received by the Postal Service, and most domestic Marketing Mail is delivered 3-10 days after it is received.

To account for these delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), the Postal Service strongly recommends adhering to the following timeframe when using the mail to transmit ballots to domestic voters:

- **Ballot requests:**  Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

- **Mailing blank ballots to voters:**  In responding to a ballot request, election officials should consider that the ballot needs to be in the hands of the voter so that he or she has adequate time to complete it and put it back in the mail stream so that it can be processed and delivered by the applicable deadline.  Accordingly, the Postal Service recommends that election officials use First-Class Mail to transmit blank ballots and allow 1 week for delivery to voters.  Using Marketing Mail will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
(b)(6); (b)(3):39
FAX: 202-268-6981
(b)(6); (b)(3):39 USC
www.usps.com

- **Mailing completed ballots to election officials:**  To allow enough time for ballots to be returned to election officials, domestic voters should generally mail their completed ballots at least one week before the state's due date.  In states that allow mail-in ballots to be counted if they are *both* postmarked by Election Day *and* received by election officials by a specific date that is less than a week after Election Day, voters should mail their ballots at least one week before they must be received by election officials.  So, for example, if state law requires a mail-in ballot to be postmarked by Tuesday, November 3, and received by Thursday, November 5, voters should mail their ballot by Thursday, October 29, to allow enough time for the ballots to be delivered by November 5.  Voters must also be aware of the posted collection times on collection boxes and at the Postal Service's retail facilities and that ballots entered after the last posted collection time on a given day will not be postmarked until the following business day.

Under our reading of your state's election laws, as in effect on July 27, 2020, certain state-law requirements and deadlines appear to be incompatible with the Postal Service's delivery standards and the recommended timeframe noted above.  As a result, to the extent that the mail is used to transmit ballots to and from voters, there is a significant risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted.

Specifically, it appears that a voter may generally request a ballot as late as 7 days before the election, and that a completed ballot must be postmarked by Election Day and received by election officials within 48 hours after the closing of polls.  If a voter submits a request at or near the ballot-request deadline, and if the requested ballot is transmitted to the voter by mail, there is a risk that the ballot will not reach the voter before Election Day, and accordingly that the voter will not be able to use the ballot to cast his or her vote.  That risk is exacerbated by the fact that the law does not appear to require election officials to transmit a ballot until 2 business days after receiving a ballot request.  Even if the requested ballot reaches the voter by Election Day, there is a risk that, given the delivery standards for First-Class Mail, a completed ballot postmarked on or close to Election Day will not be delivered in time to meet the state's receipt deadline of November 5.  As noted above, voters who choose to mail their ballots should do so no later than Thursday, October 29.

To be clear, the Postal Service is not purporting to definitively interpret the requirements of your state's election laws, and also is not recommending that such laws be changed to accommodate the Postal Service's delivery standards.  By the same token, however, the Postal Service cannot adjust its delivery standards to accommodate the requirements of state election law.  For this reason, the Postal Service asks that election officials keep the Postal Service's delivery standards and recommendations in mind when making decisions as to the appropriate means used to send a piece of Election Mail to voters, and when informing voters how to successfully participate in an election where they choose to use the mail.  It is particularly important that voters be made aware of the transit times for mail (including mail-in ballots) so that they can make informed decisions about whether and when to (1) request a mail-in ballot, and (2) mail a completed ballot back to election officials.

We remain committed to sustaining the mail as a secure, efficient, and effective means to allow citizens to participate in the electoral process when election officials determine to utilize the mail as a part of their election system.  Ensuring that you have an understanding of our operational capabilities and recommended timelines, and can educate voters accordingly, is important to achieving a successful election season.  Please reach out to your assigned election mail coordinator to discuss the logistics of your mailings and the services that are available as well as any questions you may have.  A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/politicalelection-mail-coordinators.pdf.

We hope the information contained in this letter is helpful, and please let me know if you have any questions or concerns.

Sincerely,

(b)(6); (b)(3):39 USC 410 (c)(2)

Thomas J. Marshall

**Exhibit 7**



Office of Inspector General | United States Postal Service

## Audit Report

# Processing Readiness of Election and Political Mail During the 2020 General Elections

Report Number 20-225-R20 | August 31, 2020

# Table of Contents

Cover

Highlights ........................................................................ 1

  Objective ...................................................................... 1

  Findings ........................................................................ 1

    Stakeholder-Related Election Mail Issues ...................... 2

    Readiness for Timely Processing .................................. 3

  Recommendations ........................................................ 4

Transmittal Letter .............................................................. 5

Results .............................................................................. 5

  Introduction/Objective ................................................... 6

  Background ................................................................... 6

  Finding #1: Stakeholder-Related Election Mail Issues ....... 7

    Use of Barcodes ......................................................... 8

    Ballot Envelope Design ................................................ 8

    Mailing Too Close to Election Date ............................... 9

    Postmarks .................................................................. 10

    Addresses .................................................................. 11

    Postal Service Actions to Improve Timely Delivery of Election and Political Mail ............................................... 11

    Recommendation #1 .................................................... 13

Finding #2: Readiness for Timely Processing ....................... 13

  Daily All-Clear Certification ............................................ 14

  Election and Political Mail Audit Checklist ....................... 16

  Operational Clean Sweep Search Checklist ...................... 16

  Election and Political Mail Log ....................................... 16

  Postal Postmarking Process ........................................... 17

  Best Business Practices ................................................. 17

  Recommendation #2 ..................................................... 18

  Recommendation #3 ..................................................... 18

  Recommendation #4 ..................................................... 18

  Recommendation #5 ..................................................... 18

Management's Comments ................................................... 18

Evaluation of Management's Comments ............................... 19

Appendices ....................................................................... 20

  Appendix A: Additional Information ................................. 21

    Scope and Methodology ............................................. 21

    Prior Audit Coverage ................................................... 22

  Appendix B: Postmark Requirements by State .................. 23

  Appendix C: Management's Comments ............................ 25

Contact Information ........................................................... 31

# Highlights

## Objective

Our objective was to evaluate the U.S. Postal Service's readiness for timely processing of Election and Political Mail for the 2020 general elections.

Election Mail is any mailpiece that an authorized election official creates for voters participating in the election process and includes ballots and voter registration materials. Political Mail is any mailpiece created by a registered political candidate, a campaign committee, or a committee of a political party for political campaign purposes.

Election and Political Mail can be sent as either First-Class Mail, which takes 2 to 5 days to be delivered, or Marketing Mail, which takes 3 to 10 days to be delivered, depending on the preference of the customer. However, ballots returned by voters are required to be sent as First-Class Mail. While Marketing Mail has longer processing and delivery timeframes, it costs less than First-Class Mail.

> "The Postal Service plays a vital role in the American democratic process and this role continues to grow as the volume of Election and Political Mail  increases."

The Postal Service plays a vital role in the American democratic process and this role continues to grow as the volume of Election and Political Mail increases. In addition to the next general election, which will be held November 3, 2020, there will be federal elections for all 435 seats in the U.S. House of Representatives and 35 of the 100 seats in the U.S. Senate. There will also be 13 state and territorial elections for governor and numerous other state and local elections. Due to the COVID-19 pandemic, there is an expected increase in the number of Americans who will choose to vote by mail and avoid in-person voting.

Our prior audits related to the Postal Service's processing of Election and Political mail include: *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections* (Report Number NO-AR-18-007, dated June 5, 2018), *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Report Number 19XG010NO000-R20, dated November 4, 2019), and *Timeliness of Ballot Mail in the Milwaukee Processing and Distribution Center Service Area* (Report Number 20-235-R20, dated July 7, 2020).

In the prior audits, we found the Postal Service needed to improve communication between headquarters, mail processing facilities, and election officials; train staff on Election and Political Mail processes; keep internal Election and Political Mail websites up-to-date; and appropriately align resources to process peak Election and Political Mail volume.

This audit was conducted during special and primary elections held in May and June 2020 and included reviewing operations at Processing and Distribution Centers (P&DC) that were processing mail for a special or primary election in each of the seven Postal Service areas. The facilities reviewed were Santa Clarita, Portland, Indianapolis, Baltimore, Charleston, Brooklyn, and Oklahoma City P&DCs.

We did not evaluate recent operational changes made by the Postal Service or the significant increases in delayed mail at delivery units experienced this summer. In response to a congressional request received on August 7, 2020, we have an ongoing project which will evaluate these operational changes and their impact on mail service. On August 18, 2020, the Postmaster General announced he was suspending initiatives regarding Postal Service operational changes until after the general election is concluded.

## Findings

While the Postal Service has made progress in preparing for the 2020 general election, there are concerns surrounding integrating stakeholder processes with Postal Service processes to help ensure the timely delivery of Election and Political Mail. These potential concerns include:

- ▪ Ballots mailed without barcode mail tracking technology;
- ▪ Ballot mailpiece designs that result in improper processing;

- Election and Political Mail likely to be mailed too close to the election, resulting in insufficient time for the Postal Service to process and deliver the mailpieces;

- Postmark requirements for ballots; and

- Voter addresses that are out of date.

Resolving these issues will require higher level partnerships and cooperation between the Postal Service and various state officials, including secretaries of state and state election boards. Timely delivery of Election and Political Mail is necessary to ensure the integrity of the U.S. election process.

## Stakeholder-Related Election Mail Issues

The Postal Service has frequently communicated to state election officials the importance of ballot mailpiece tracking and design, the required timeframes for processing and delivering mail, and the importance of updating voter addresses. They have designated area and district Political and Election Mail coordinators to conduct outreach to state and local election officials and published a toolkit for election officials to facilitate voting by mail. Further, the Postal Service has altered their normal processes to accommodate for the timely processing of Election and Political Mail, such as requiring postmarks on all ballots, prioritizing the pickup, processing, and delivery of Election and Political Mail, and diverting resources as necessary. However, as mentioned in the *Timeliness of Ballot Mail in the Milwaukee P&DC Service Area* audit, issues surrounding these items continue to occur.

- The Postal Service, mailers, and election boards are not able to track ballot envelopes that do not have barcodes. According to Postal Service management, some election boards have chosen to continue using excess stock of ballot envelopes without barcodes and some lack the funding for integrating the use of barcodes in their mailing process. Based on data analyzed from the 2018 general election season, about 31.1 million ballots were cast by mail, but only 4.1 million (13 percent) Election Mail mailpieces used mail tracking technology.

- Some election boards continue using ballot envelope designs which can cause mail processing machines to return ballots to voters. This can occur when the ballot envelope contains more than two addresses, as well as when addresses are located on both sides of the envelope.

- Mailers, election boards, and voters are likely to mail Election and Political Mail too close to an election. This could result in insufficient time for the Postal Service to process and deliver the mailpieces within prescribed delivery standards, and still meet state deadlines for receiving ballots from voters. The Postal Service suggests election offices send ballots as First-Class Mail, and while First-Class Mail only takes 2 to 5 days to be delivered, the Postal Service recommends election offices send ballots to voters at least 15 days prior to an election. This is to ensure time for the ballot to reach the voter and for the voter to complete and return the ballot. However, 48 states and the District of Columbia have absentee ballot request deadlines less than 15 days in advance of an election. According to Postal Service management, during the primary election season, election boards mailed over 1 million ballots to voters within 7 days of an election. This put these ballots at high risk by not allowing sufficient time for delivery to voters and their subsequent delivery back to the election boards.

- Postmarking provides an official date stamp for ballots; however, ballot postmarking policies vary by state. Although 29 states do not currently require postmarks on absentee ballots, the states that do require them have different timeframes for when ballots must be postmarked or received to be counted. In anticipation of an increase in voting by mail during the November 2020 general election, some states have recently updated their postmark requirements.

- States have different requirements and timeframes for updating their voter registries. Some states only update voter address information every two years and run the risk of using outdated addresses for their registered residents who have moved. This can cause absentee ballots intended for voters to be returned to election officials as undeliverable.

When mailers, states, and election boards do not follow recommended best practices to prepare, process, and track Election and Political Mail sent to voters, there is an increased risk the mail may not be delivered timely.

## Readiness for Timely Processing

Since our prior audits, the Postal Service has improved internal communication between headquarters and mail processing facilities, and developed online Election and Political Mail training. However, the amount of identifiable Election and Political Mail delivered on-time nationwide was 94.5 percent from April 2020 through June 2020, a decrease of 1.7 percentage points compared to the same time period in 2018.

The seven P&DCs we reviewed that were processing Election and Political Mail for special or primary elections did not always comply with Election and Political Mail readiness procedures. Specifically:

- While all seven facilities performed some level of certification that they were clear of Election and Political Mail in their facility at the end of the day, five of the facilities did not fully comply during the two weeks leading up to the election. Specifically, facilities either did not complete, properly complete, or timely complete the daily certification. Further, even though the Oklahoma and Baltimore P&DCs certified they were clear of Election and Political Mail daily, we identified approximately 200 ballots at the Oklahoma City P&DC and 68,000 Political Mail mailpieces at the Baltimore P&DC that had not been processed.

- Six of the seven facilities did not always complete daily self-audits of Election and Political Mail readiness. The self-audit verifies readiness to receive and process Election and Political Mail and includes items such as verifying daily all-clear checks, evaluating the setup of a staging area, and logging the arrival of Election and Political Mail.

- None of the seven facilities used the Postal Service's Operational Clean Sweep Search Checklist. This checklist provides a list of specific areas to check when searching for Election and Political Mail within the mail processing facility.

- Six of the seven facilities used their own variation of the Election and Political Mail logs, which were missing key information such as mail class and the date/time it was cleared from the operation. The logs help track Election and Political Mail as it moves through the Postal Service's network.

These issues occurred due to a lack of management oversight and unclear guidance regarding who is responsible for completing all-clear certifications, checklists, and logs; who ensures issues are resolved; and how often these items should be completed and maintained. Not completing and using these tools could result in processing delays and lower service performance. An analysis of data determined the total number of identifiable Election and Political Mail mailpieces not delivered on time from April 2020 through June 2020 for the seven P&DCs was about 1.6 million (8 percent) of 20.2 million mailpieces.

In addition, we noted that while postmarks are not required on all mailings and are intended to be a revenue protection mechanism to prevent the reuse of postage, the Postal Service has directed personnel to postmark all ballots to assist state election boards. However, we found that ballots are not always being postmarked as required and it is a challenge for the Postal Service to ensure full compliance. Some ballots did not receive a postmark due to: (1) envelopes sticking together when processed on a machine; (2) manual mail processing; or (3) personnel unaware that all return ballots, even those in prepaid reply envelopes, need to receive a postmark. Without a postmark on return ballots mailed by voters, a ballot could be rejected and a vote not counted. The Postal Service reissued guidance on July 29, 2020 and held a webinar reiterating to employees that all ballots sent by voters must have a postmark. The Postal Service is also currently evaluating the proper postmarking procedures for situations where a ballot is received at a delivery unit with no postmark, but there is evidence that it was processed by the Postal Service on or before election day. Therefore, we are not making a recommendation regarding this issue.

## Best Practices

We identified several best practices employed at various locations to improve readiness for processing Election and Political Mail. These practices include:

- Political and Election Mail coordinators obtaining an estimate of Election and Political Mail volume and drop off dates in advance from mailers which helped inform facilities of potential staffing requirements.

- Facilities obtaining sample ballot envelopes to test in mail processing machines.

- Facilities using work floor monitors to display important Election and Political Mail information, such as upcoming election dates and deadlines.

- States, such as Colorado, paying independent contractors to track ballots and provide alerts during each step of the voting process – from ballot printing to acceptance by election officials.

- Election officials creating colored absentee ballot return envelopes to make identifying return ballots easier for the Postal Service, election offices, and voters.

## Recommendations

We recommended management:

- Leverage established partnerships with state and local election officials to work toward creating a separate, simplified mail product exclusively for Election Mail that would support uniform mail processing, including mandatory mailpiece tracking and proper mailpiece design. Until this new product is developed, continue to prioritize the processing of Election Mail consistent with past practices.

- Ensure mail processing facilities perform an accurate daily certification that they are clear of Election and Political Mail using the Operational Clean Sweep Search Checklist.

- Clearly define roles, responsibilities, and oversight to ensure that the Political and Election Mail Audit Checklist is completed; and define timeframes for completion during election season.

- Ensure mail processing facilities use and maintain the standardized Election and Political Mail log for each operation.

- Implement best practices identified during our audit and continue educating election officials on identified best practices to increase nationwide Election and Political Mail readiness.

# Transmittal Letter



OFFICE OF INSPECTOR GENERAL
UNITED STATES POSTAL SERVICE

August 31, 2020

**MEMORANDUM FOR:**   DAVID E. WILLIAMS
CHIEF LOGISTICS AND PROCESSING
OPERATIONS OFFICER



E-Signed by Inspector General
VERIFY authenticity with eSign Desktop

**FROM:**   Darrell E. Benjamin, Jr.
Deputy Assistant Inspector General
for Mission Operations

**SUBJECT:**   Audit Report – Processing Readiness of Election and
Political Mail During the 2020 General Elections
(Report Number 20-225-R20)

This report presents the results of our audit of the Processing Readiness of Election and
Political Mail During the 2020 General Elections.

We appreciate the cooperation and courtesies provided by your staff. If you have any
questions or need additional information, please contact Todd J. Watson, Director,
Network Processing, or me at 703-248-2100.

Attachment

cc:  Postmaster General
     Corporate Audit Response Management

# Results

## Introduction/Objective

This report presents the results of our self-initiated audit of the U.S. Postal Service's Processing Readiness of Election and Political Mail During the 2020 General Elections (Project Number 20-225). Our objective was to evaluate the U.S. Postal Service's readiness for timely processing of Election and Political Mail for the 2020 general elections.

## Background

The 2020 U.S. general elections are scheduled to be held on Tuesday, November 3, 2020. In addition to the presidential election, federal elections will also be held for all 435 seats in the U.S. House of Representatives and 35 of the 100 seats in the U.S. Senate. There will also be 13 state and territorial elections for governor and numerous other state and local elections.

Due to the COVID-19 pandemic, there is an expected increase in the number of Americans who will choose to vote by mail[1] and avoid in-person voting. Every state allows some form of absentee ballot[2] voting[3]; however, only five states allow elections to be conducted entirely by mail.[4] Currently, there are over 152 million registered U.S. voters. If every registered voter received and returned a ballot by mail in the November 2020 general election, it would represent less than 1.4 percent of the Postal Service's average monthly volume.[5] The Postal Service plays a vital role in the American democratic process and this role will continue to grow as the volume of Election and Political Mail increases.

> *"Our objective was to evaluate the U.S. Postal Service's readiness for timely processing of Election and Political Mail for the 2020 general elections."*

Election Mail is any mailpiece that an authorized election official creates for voters participating in the election process and includes ballots and voter registration materials. Political Mail is any mailpiece created by a registered political candidate, a campaign committee, or a committee of a political party for political campaign purposes.

Election and Political Mail can be sent as either First-Class Mail, which takes 2 to 5 days to be delivered, or Marketing Mail, which takes 3 to 10 days to be delivered, depending on the preference of the customer. However, ballots returned by voters are required to be sent as First-Class Mail. While Marketing Mail has longer processing and delivery timeframes, it costs less than First-Class Mail.

Our prior audits related to Postal Service's processing of Election and Political mail include: *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections* (Report Number NO-AR-18-007, dated June 5, 2018), *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Report Number 19XG010NO000-R20, dated November 4, 2019), and *Timeliness of Ballot Mail in the Milwaukee Processing and Distribution Center Service Area* (Report Number 20-235-R20, dated July 7, 2020).

In the prior audits, we found the Postal Service needed to improve communication between headquarters, mail processing facilities, and election officials; train staff on Election and Political Mail processes; keep internal Election and Political Mail websites up-to-date; and appropriately align resources to process peak Election and Political Mail volume. We also noted potential concerns nationally with deadlines set by the states to request absentee ballots, ballot postmarks, ballots mailed without mail tracking technology, and the ratio of Political and Election Mail coordinators to election offices in certain locations. The Postal Service has implemented corrective actions for these recommendations.

---

1   Vote by mail occurs when voters receive or return their ballots through the mail.
2   An absentee ballot is a ballot that has been sent to a voter who will use it to vote outside of a polling place or election official's office.
3   All states will mail absentee ballots to certain voters who request one. In most states, any qualified voter may vote absentee without offering an excuse, but other states require an excuse to request an absentee ballot.
4   In Colorado, Hawaii, Oregon, Washington, and Utah, a ballot is automatically mailed to every eligible voter (no request or application is necessary).
5   Through Fiscal Year 2020, Quarter 3, on average the Postal Service processed over 22 billion mailpieces monthly.

This audit was conducted during special and primary elections held in May and June 2020 and included reviewing operations at Processing and Distribution Centers (P&DCs) that were processing mail for a special or primary election in each of the seven Postal Service areas (see Table 1). During our audit, we noted some states changed their vote by mail requirements in response to the COVID-19 pandemic. For example, some states changed their ballot postmarking requirements and/or absentee ballot request deadlines. Any state election process or requirement change made after August 2020 is not reflected in this report. See Appendix A for additional details.

**Table 1. Mail Processing Facilities Reviewed and Corresponding Election**

| Area | Facility (P&DC) | Primary or Special Election | 2020 Election Date |
|---|---|---|---|
| Pacific | Santa Clarita, CA | Special | May 12 |
| Western | Portland, OR | Primary | May 19 |
| Capital Metro | Baltimore, MD | Primary | June 2 |
| Great Lakes | Indianapolis, IN | Primary | June 2 |
| Eastern | Charleston, WV | Primary | June 9 |
| Northeast | Brooklyn, NY | Primary | June 23 |
| Southern | Oklahoma City, OK[6] | Primary | June 30 |

Source: U.S. Postal Service Office of Inspector General (OIG) analysis.

We did not evaluate recent operational changes made by the Postal Service or the significant increases in delayed mail at delivery units experienced this summer. In response to a congressional request received on August 7, 2020, we have an ongoing project[7] which will evaluate these operational changes and their impact on mail service. On August 18, 2020, the Postmaster General (PMG) announced he was suspending initiatives regarding Postal Service operational changes[8] until after the general election is concluded. The PMG also announced an expansion of the election mail task force to include leaders from postal unions and management associations to enhance partnerships with state and local election officials.

## Finding #1: Stakeholder-Related Election Mail Issues

While the Postal Service has made progress in preparing for the 2020 general election, there are concerns surrounding integrating stakeholder processes with the Postal Service's processes to help ensure the timely delivery of Election and Political Mail.

These potential concerns include:

- Ballots mailed without barcode[9] mail tracking technology;
- Ballot mailpiece designs that result in improper processing;
- Election and Political Mail likely to be mailed too close to the election, resulting in insufficient time for the Postal Service to process and deliver the mailpieces;
- Postmark requirements for ballots; and
- Voter addresses that are out of date.

Resolving these issues will require higher level partnerships and cooperation between the Postal Service and various state officials, including secretaries of state and state election boards. Timely delivery of Election and Political Mail is necessary to ensure the integrity of the U.S. election process.

---

6   Due to the COVID-19 pandemic, the team conducted virtual site visits for all facilities except Oklahoma City P&DC.
7   *Evaluation of Operational Changes on Mail Delivery Service*, Project Number 20-292.
8   Mail processing equipment and blue collection boxes will remain where they are, no mail processing facilities will close, and overtime will continue to be approved, as needed.
9   A Postal Service barcode is used to sort and track letters and flats. The Postal Service is promoting use of the barcodes because it expands the ability to track individual mailpieces and provides customers with greater visibility into the mailstream.

↰ BACK to COVER

## Use of Barcodes

The Postal Service, mailers, and election boards are not able to track ballot envelopes that do not have barcodes. While there is no requirement for ballots to have barcodes, the Postal Service has recommended election offices use them. Barcodes can be used by both the Postal Service and the mailer, or election office, to track ballots sent to and returned by voters. Without the use of barcodes it is extremely challenging and, in many cases not possible, to determine whether or not a ballot was sent through the Postal Service, returned by a voter, and/or if there was a delay in the Postal Service's processes. Based on data analyzed from the 2018 general election season, less than 4.1 million[10] (13 percent) of the 31.1 million[11] vote by mail ballots used barcodes.

According to Postal Service management, some election boards have chosen to continue using excess stock of ballot envelopes that do not have barcodes and some lack the funding for integrating the use of barcodes in their mailing processes. One state's election office we spoke with stated there would be challenges incorporating barcodes into their system and that it could not be completed before the 2020 general election.

## Ballot Envelope Design

States include different security features on ballot return envelopes to help protect voting by mail and validate voter identity. These features can include barcodes to identify the voter, voter and witness signatures, voter address, notary seal, and driver's license or social security number. However, if these features are not properly located on the envelope, mail processing machines may missort the mailpiece and return the ballot to the voter. This can occur when the ballot envelope contains more than two addresses or when addresses are located on both sides of the envelope (see Figure 1). The Postal Service also received return ballots from voters that didn't have the election office address included on the envelope. This also caused the ballot to be returned to the voter (see Figure 2).

**Figure 1. Example of Ballot Return Envelope with Barcode, Voter and Witness Signature, and Voter Address on the Back**



Source: OIG, August 2020.

---

10  This data was pulled from Informed Visibility (IV) during October and November 2018, and includes all Election Mail mailpieces, not just ballots.
11  This data was obtained from the U.S. Election Assistance Commission report, *Election Administration and Voting Survey, 2018 Comprehensive Report, A Report to the 116th Congress,* dated June 2019, and includes only ballots.

**Figure 2. Example of Ballot Return Envelope with No Address**



Source: USPS, August 2020.

## Mailing Too Close to Election Date

Mailers, election boards, and voters are likely to mail Election and Political Mail too close to an election. This could result in insufficient time for the Postal Service to process and deliver the mailpieces within prescribed delivery standards[12] and still meet state deadlines for receiving ballots from voters. Any time Election and Political Mail mailpieces are mailed before an election with less time than the corresponding service standard, they are at risk of not being delivered before an election.

The Postal Service suggests election offices send ballots as First-Class Mail. While First-Class Mail only takes 2 to 5 days to be delivered[13], the Postal Service recommends election offices send ballots to voters at least 15 days prior to an election to ensure time for the ballot to reach the voter and for the voter to complete and return the ballot. However, 34 states and the District of Columbia have absentee ballot request deadlines (those with no deadline or a deadline

within seven days of the election) that do not provide sufficient time for election offices to generate ballots and for the Postal Service to process and deliver the ballots to voters before the election (see Table 2). Additionally, 14 other states have deadlines (8 to 14 days before election) that put ballots at high risk of not being delivered to voters before an election.[14]

**Table 2. States with Ballot Request Deadlines Seven Days or Less Before Election Day**

| Number of Days Before Election Day | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| No Deadline | 1 day | 2 days | 3 days | 4 days | 5 days | 6 days | 7 days |
| MS | CT | | ME | GA | AL | WV | AR |
| NH | DE | | OH | LA | IL | | CA |
| ND | MN | | | MA | NM | | DC |
| | MT | | | MI | WI | | HI |
| | SD | | SC | | | | KS |
| | VT | | | | | | KY |
| | WY | | | | | | MD |
| | | | | | | | NJ |
| | | | | | | | NY |
| | | | | | | | NC |
| | | | | | | | OK |
| | | | | | | | PA |
| | | | | | | | TN |

Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

---

12  Election and Political Mail can be sent as First-Class Mail, which takes 2 to 5 days to be delivered, or as Marketing Mail, which takes 3 to 10 days to be delivered.

13  First-Class Mail sent within the continental U.S. takes 2 to 3 days.

14  The two states that allow sufficient time for the voter to receive, complete, and mail the ballot back before the day of the election are Oregon and Rhode Island – both require the voter to request a ballot 21 days in advance of election day.

↰ BACK to COVER

> **"According to Postal Service management, during the primary election season from June 2, 2020, through August 13, 2020, election boards mailed over 1 million ballots out to voters late."**

According to Postal Service management, during the primary election season from June 2, 2020, through August 13, 2020, election boards mailed over 1 million ballots out to voters late (within seven days of an election).[15] This put these ballots at high risk by not allowing sufficient time for delivery to voters and their subsequent delivery back to the election boards. Specifically:

- Kentucky and New York election boards accounted for 60 percent (over 628,000 ballots) of the ballots sent out late to voters.

- In 11 states, over 44,000 ballots were sent from the election boards to voters the day of or day before the state's primary election.

- In Pennsylvania, 500 ballots were sent from the election board to voters the day after the election.

- In 17 states, over 589,000 ballots were sent from the election boards to voters after the state's ballot mailing deadline.

In a recent prior audit[16], we also noted ballots going out to voters being mailed the day of an election. As a result, the ballots were not delivered until after election day and voters were not able to successfully participate in the election. We also observed similar issues involving Political Mail[17] during our site visit to the Oklahoma City P&DC. We noted a mailer dropping off Political Mail at 5:30 p.m. on the state's primary election date.

The Postal Service took corrective action to partially address this ongoing issue and created a standardized cautionary notice form[18] for both Election and Political Mail. Now the Postal Service requires[19] mailers to sign these forms acknowledging the Election or Political Mail may not be delivered before the election when it is mailed too close to election day.

## Postmarks

Postmarks[20] provide an official date stamp for ballots, but ballot postmarking policies vary widely by state (see Figure 3). In anticipation of an increase in voting by mail during the November 2020 general election, some states have also recently updated their postmark requirements.

- Twenty-nine states do not require postmarks on absentee ballots. In these states, ballots must be received by election officials on election day to count and ballots received after election day are not counted, regardless of the postmark date.

- The remaining 21 states and the District of Columbia require postmarks but have different timeframes for when ballots must be postmarked and received to count.[21]

For more details on postmark requirements, see Appendix B.

---

15  For purposes of this review, the Postal Service considered a ballot to be late if it was sent by the election board to the voter within seven days of election day.
16  *Timeliness of Ballot Mail in the Milwaukee P&DC Service Area* (Report Number 20-235-R20, dated July 7, 2020).
17  This was campaign mail from a political candidate, not ballots.
18  The cautionary notice form is to be used when mail is presented after the recommended final entry date, and includes information such as class of mail, date of mailing, pieces in mailing, and permit holder/number.
19  The cautionary notice form is required to be completed at locations where mailers drop off mailings. This includes both Business Mail Entry Units (BMEU) and associate offices.
20  A postmark is an official Postal Service imprint applied in black ink on the address side of a stamped mailpiece.
21  Two states (Alabama and Utah) require postmarks on all mailed ballots, even if the mailed ballots are received prior to election day.

**Figure 3. State Postmark Requirements**



Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

## Addresses

Incorrect voter addresses can cause absentee ballots intended for voters to be returned to election officials as undeliverable. States have different requirements and timeframes for updating their voter registries. People move frequently in the U.S. and often do not contact election officials to inform them of their new address.

States confirm and update voter addresses by sending periodic address confirmation mailings, verifying addresses against the Department of Motor Vehicle's database, or running checks against the Postal Service's National Change of Address (NCOA) files to see if a voter's information has changed. While the Postal Service makes the NCOA database available to all states, only 36 states have chosen to use it. In addition, some states only update

voter address information every two years, and run the risk of using outdated addresses for their registered residents who have moved within that time period.

When mailers, states, and election boards do not follow recommended best practices to prepare, process, and track Election and Political Mail sent to voters, there is an increased risk the mail may not be delivered timely.

## Postal Service Actions to Improve Timely Delivery of Election and Political Mail

The Postal Service has frequently communicated to state election officials the importance of ballot mailpiece tracking and design, the required timeframes for processing and delivering mail, and the importance of updating voter addresses.

The Postal Service has designated area and district Political and Election Mail coordinators to conduct outreach to state and local election officials. Some of their responsibilities include educating Election Mail stakeholders on Postal Service best practices and having direct, two-way interaction with state and local officials. The Postal Service also publishes a toolkit[22] for election officials to facilitate voting by mail. The toolkit describes the process for tracking ballots through the mailstream, information on how to contact a mailpiece design analyst, and ensuring voter addresses are up-to-date, accurate, and complete. The Postal Service also issued letters on May 29, 2020 and July 29, 2020, reminding election officials about mailing standards and deadlines. According to Postal Service management, they have had over 39,000 meetings or correspondences with the 50 states, and the District of Columbia, on matters surrounding Election and Political Mail.

Additionally, the Postal Service has altered its normal processes to accommodate for the timely processing of Election and Political Mail and help meet the needs of elections. Specifically:

- The Postal Service is requiring all ballots mailed back from voters to have a postmark including prepaid envelopes that are not normally postmarked.

- The Postal Service often prioritizes Election and Political Mail mailed as Marketing Mail and treats it as First-Class Mail. In addition, the Postal Service has expedited ballots that are mailed too close to election day via Priority Mail Express.[23] In New York, an election board dropped off about 62,000 ballots one day before the primary election. Since New York requires all return ballots to be postmarked by election day, the Postal Service sent all ballots out by express mail to give voters the opportunity to vote.

- The Postal Service does not delay delivery of ballots addressed to an election office due to insufficient postage.

- Prior to election day, the Postal Service adds direct transportation trips to election offices to ensure all outgoing ballots are picked up and processed

timely. For example, for the District of Columbia's June 2, 2020 primary election, the Postal Service agreed to make three pickups (1:30 p.m., 5:00 p.m., and 10:00 p.m.) on May 28 and May 29, 2020 to clear all outgoing ballots.

- On election day, the Postal Service often diverts staff to manually identify and separate absentee ballots to speed up their delivery to election officials and help ensure votes are counted. During our review of the Oklahoma City P&DC, we observed management and employees manually sorting through trays of mail to identify ballots to ensure they were delivered on time. Further, they tasked some employees with driving to county election boards across the state to ensure ballots were delivered on time.

> *"On election day, the Postal Service often diverts staff to manually identify and separate absentee ballots to speed up their delivery to election officials and help ensure votes are counted."*

Integrating stakeholder processes with the Postal Service's processes is critical to the upcoming election to ensure the timely processing and delivery of ballots. The integration of these processes is dependent on strong relationships between the Postal Service and the approximately 8,880 election boards, as well as the secretaries of state and state election directors. As we have made recommendations in a prior audit[24] to address the process integration concerns, and corrective actions are ongoing, we are not making further recommendations regarding these issues. However, there is a need to develop a mail product that more comprehensively addresses the requirements associated with voting by mail and simplifies compliance with those requirements for future election cycles.

---

22  2020 Official Election Mail – Kit 600.
23  Priority Mail Express is the fastest mail service offered by the Postal Service, and includes overnight delivery.
24  *Timeliness of Ballot Mail in the Milwaukee P&DC Service Area* (Report Number 20-235-R20, dated July 7, 2020).

<div style="border-left: 4px solid maroon; padding-left: 1em;">

**Recommendation #1**

We recommend the **Chief Logistics and Processing Operations Officer** leverage established partnerships with state and local election officials to work toward creating a separate, simplified mail product exclusively for Election Mail that would support uniform mail processing, including mandatory mailpiece tracking and proper mailpiece design. Until this new product is developed, continue to prioritize the processing of Election Mail consistent with past practices.

</div>

## Finding #2: Readiness for Timely Processing

Since our prior audits, the Postal Service has improved internal communication between headquarters and mail processing facilities, and developed online Election and Political Mail training.

However, the amount of identifiable[25] Election and Political Mail delivered on time nationwide was about 94.5 percent[26] from April 2020 through June 2020, a decrease of 1.7 percentage points when compared to the same period in 2018. See Table 3 for a breakdown of Election and Political Mail scores by mail class.

**Table 3. Election and Political Mail Counts and Amount Delivered On Time**

| Mail Class | April through June 2018 | | | |
| | Election Mail | | Political Mail | |
| | Count | On Time | Count | On Time |
| --- | --- | --- | --- | --- |
| **First-Class Mail** | 3,681,695 | 97.8% | 4,271,464 | 94.6% |
| **Marketing Mail** | 35,987,820 | 95.4% | 197,406,056 | 96.4% |

| Mail Class | April through June 2020 | | | |
| | Election Mail | | Political Mail | |
| | Count | On Time | Count | On Time |
| --- | --- | --- | --- | --- |
| **First-Class Mail** | 26,914,852 | 96.1% | 4,133,514 | 89.4% |
| **Marketing Mail** | 32,973,899 | 97.1% | 168,848,594 | 93.7% |

Source: IV and OIG analysis.

---

25  It is likely that these figures do not fully represent the total amount of Election and Political Mail, as these mailpieces can only be identified, measured, and tracked by the Postal Service if they have a barcode.
26  This is a composite score calculated from the cumulative total of both Election and Political Mail, as well as First-Class and Marketing Mail.

We found that the seven P&DCs we reviewed that were processing Election and Political Mail for special or primary elections did not always comply with Election and Political Mail readiness procedures. Specifically, it is the Political and Election Mail coordinator's responsibility to certify that processing facilities and customer service units under their jurisdiction are clear of all committed Election and Political Mail during the specified election timeframe (two weeks before and two weeks after the election).[27] The Postal Service has controls and tools in place, such as daily self-audits, clearance checklists, and Election and Political Mail logs, to ensure compliance to their Election and Political Mail readiness procedures, and to assist with its daily all-clear certifications. However, due to unclear guidance the daily all-clear certifications, as well as the checklists and logs, were not always completed as required.

### Daily All-Clear Certification

While all seven facilities performed some level of certification that they were clear of Election and Political Mail in their facility at the end of the day, five of the facilities did not fully comply during the two weeks leading up to the election. Specifically, facilities either did not complete, properly complete, or timely complete the daily certification. (see Table 4).

> "*While all seven facilities performed some level of certification that they were clear of Election and Political Mail in their facility at the end of the day, five of the facilities did not fully comply during the two weeks leading up to the election.*"

**Table 4. Daily All-Clear Certification Compliance for the 15 Days Reviewed**

| Facility (P&DC) | Days Not Certified | Days Certified Non-Compliant[28] | Days Not Certified Timely |
|---|---|---|---|
| Santa Clarita | 0 | 0 | 2 |
| Portland | 0 | 0 | 1 |
| Baltimore | 0 | 0 | 0 |
| Indianapolis | 1 | 0 | 0 |
| Charleston | 0 | 0 | 0 |
| Brooklyn | 0 | 3 | 0 |
| Oklahoma City | 0 | 0 | 1 |

Source: OIG interviews and analysis of documentation received from the facility.

Further, even though the facilities validated that they were clear of all committed Election and Political Mail, we found instances where both types of mail had not been processed. During our site visit at the Oklahoma City P&DC, management indicated they were clear of Election and Political Mail during the morning of the Oklahoma Primary election on June 30, 2020. However, we found two trays of Election Mail ballots (or approximately 200 mailpieces), postmarked on June 29, 2020, on the workroom floor (See Figure 4). As soon as Oklahoma City P&DC management was made aware of the ballots, they immediately had them sent out to the election boards, ensuring they were received on-time.

---

27  Training, 2020 Election Cycle, provided by Election and Political Mail Program Manager, dated January 15, 2020.
28  Non-compliant means Election and Political Mail scheduled to be delivered the next day remained at the facility.

**Figure 4: Ballots Found on Election Day After All-Clear**



Source: OIG photographs taken at Oklahoma P&DC on June 30, 2020 at 6:20 a.m.

In addition, even though the Baltimore P&DC certified that they were clear of Election and Political Mail daily, our audit determined that Political Mail[29] received on May 12, 2020, sat unprocessed for five days, resulting in about 68,000 Political Mail mailpieces not delivered on-time. As soon as Baltimore P&DC management discovered the Political Mail, they immediately processed it for delivery.

As previously mentioned, ensuring a facility is clear of Election and Political Mail can be supported by the timely and accurate completion of the Election and Political Mail Audit Checklist, the Operational Clean Sweep Search Checklist, and Election and Political Mail Logs. However, the facilities we reviewed did not always complete, or complete accurately, these checklists and logs. Please see Table 5 for a summary of compliance with these readiness procedures.

**Table 5. Summary of Compliance with Readiness Procedures**

| Facility (P&DC) | Election/Political Audit Checklist – Number of Days Completed out of 15[30] | Used Operational Clean Sweep Search Checklist | Election/Political Mail Log | |
|---|---|---|---|---|
| | | | Used Standard Log | Completed Accurately |
| Santa Clarita | 15 | No | No | No |
| Portland | 3 | No | Yes | No |
| Baltimore | 2 | No | No | No |
| Indianapolis | 1 | No | No | No |
| Charleston | 14 | No | No | No |
| Brooklyn | 6 | No | No | No |
| Oklahoma City | 2 | No | No | No |

Source: OIG interviews and analysis of documentation received from the facility.

---

29  This was First-Class campaign mail from a political candidate, not ballots.
30  For purposes of this review, we looked at Election and Political Mail Checklists for the two weeks prior to election day, and election day.

## Election and Political Mail Audit Checklist

Six of the seven facilities reviewed did not always complete a daily self-audit checklist of Election and Political Mail for all operations in the mailstream. According to Postal Service guidance[31], the self-audit must be completed daily and several times during the processing window by the BMEU and Mail Processing. The self-audit checklist verifies readiness to receive and process Election and Political Mail and includes items such as verifying daily all-clear checks, evaluating the setup of a staging area, and logging the arrival of Election and Political Mail.

> *"Six of the seven facilities reviewed did not always complete a daily self-audit checklist of Election and Political Mail readiness for all operations in the mailstream."*

During interviews with Postal Service management, the requirements of who is responsible for completing the audit checklist, and the timeframe of completion was unclear. Some facilities completed the audit checklist daily (including two weeks prior to election day), while others completed it the day before, day of, and day after the election, or completed it at various times throughout the election season.

In addition, the Santa Clarita, Indianapolis, Baltimore, Charleston, and Brooklyn P&DCs self-audit checklists were not completed in their entirety for various reasons; including not answering all the self-audit questions, marking "Not Applicable (N/A)" on questions that should be answered as "Yes" or "No", or marking "No" to a question and not providing an action plan to correct the deficiency.

## Operational Clean Sweep Search Checklist

None of the seven facilities reviewed used the Operational Clean Sweep Search Checklist.[32] This checklist is to be used in performing a daily Election and Political Mail search and provides a list of minimal areas to check within the mail processing facility such as BMEU, Inbound dock, Opening Units, and Outbound dock.

## Election and Political Mail Log

Six of the seven facilities reviewed used their own variation of the Election and Political Mail log. Additionally, none of the seven facilities accurately filled in information required by the standard Election and Political Mail logs. As a result, key information such as mail class, dispatch location from/to, and the date/time it was cleared from the operation, was not documented. According to Postal Service guidance[33], the logs are used to record and track all Election and Political Mail as it moves through the Postal Service's network and requires thorough and precise documentation. The logs are compared between each operation to ensure all entered mail is processed and delivered timely.

All of these issues occurred due to a lack of management oversight and unclear guidance regarding who is responsible for completing all-clear certifications, checklists, and logs, and ensuring issues are resolved, and how often these items should be completed and maintained.

Not completing and using these tools could result in processing delays and lower service performance for Election and Political Mail. The total number of identifiable Election and Political Mail mailpieces not delivered on time from April 2020 through June 2020 for the seven P&DCs was about 1.6 million of 20.2 million mailpieces, or about 8 percent.

---

31  Processing Operations Management Order (POMO) POMO 007-19, *Political and Election Mail Policies and Procedures*, dated August 15, 2019.
32  While the Charleston P&DC did not use the Operational Clean Sweep Search Checklist, they did create their own facility-specific checklist that they used during their daily searches.
33  POMO 007-19, *Political and Election Mail Policies and Procedures*, dated August 15, 2019.

## Postal Postmarking Process

Postmarks are not required on all mailings[34] and are intended to be a revenue protection mechanism to prevent the reuse of postage; however, the Postal Service has directed[35] personnel to postmark all ballots to assist state election boards. While we understand that no postmarking process is infallible, we did identify issues that occurred in the Northeast Area during the time of our audit that require attention. Specifically, in one county in New York — a state that requires a postmark — about 4,200 ballots did not receive a postmark. In this case, as well as others, ballots may not receive a postmark due to: (1) envelopes sticking together when processed on a machine; (2) manual mail processing; or (3) personnel unaware that all return ballots, even those in prepaid reply envelopes, need to receive a postmark. Further, in the Albany District, a delivery unit was unsure of what to do when they received ballots from a mail processing facility without a proper postmark date. Without a postmark on return ballots mailed by voters, a ballot could be rejected and a vote not counted.

The Postal Service reissued guidance on July 29, 2020 and held a webinar reiterating to employees that all ballots sent by voters must have a postmark. The Postal Service is also currently evaluating the proper postmarking procedures for situations where a ballot is received at a delivery unit with no postmark, but there is evidence that it was processed by the Postal Service on or before election day. Therefore, we are not making a recommendation regarding this issue.

## Best Business Practices

We identified several best practices employed by the Postal Service and election offices at various locations to improve timely processing of Election and Political Mail. These practices include:

> *"The Postal Service has directed personnel to postmark all ballots to assist state election boards."*

- Mail processing facilities in the Western and Pacific areas obtaining an estimate of Election and Political Mail volume and mailing dates in advance from mailers to help plan for potential staffing requirements. For example, Portland P&DC management were notified ahead of time by election officials of the mailpiece/pallet count of a planned Election Mail drop. This helped to ensure the facility was prepared for increased mail volume, including appropriate staffing. Election officials also notified voters via social media of the voter registration deadline and 545,000 ballots delivered to the Postal Service facility that were ready for processing (see Figure 5).

**Figure 5. Social Media Notification from Oregon Election Officials**



Source: Portland P&DC management photograph taken May 2020.

- Mail processing facilities in the Capital Metro, Eastern, Great Lakes, and Pacific areas obtaining sample ballot envelopes ahead of elections, which

---

34  Postmarks are not required on mailings bearing a permit, meter, or precanceled stamp for postage, nor to pieces with an indicia (i.e. marking on a mailpiece showing that postage has been prepaid by the sender).
35  David E. Williams (April 23, 2018), Postmarks on Ballots [Memorandum], United States Postal Service.

allowed plant management to test them in mail processing machines. This enabled mailpiece design analysts to identify potential issues and inform printers of concerns prior to Election and Political mailings being printed.

- The Portland and Brooklyn P&DCs using work floor monitors to display important Election and Political Mail information, such as upcoming election dates and deadlines.

- The state of Colorado using an independent contractor to track ballots and alert voters during each step of the voting process – from ballot printing to acceptance by election officials. These services require close coordination with state election offices, county election offices, printers, and the Postal Service. However, once this integration occurs, it can provide real-time, comprehensive data for better forecasting and planning.

- Oklahoma election officials creating green absentee ballot return envelopes they plan to use in the November 2020 general elections. This will make identifying return ballots easier for the Postal Service, election officials, and voters.

> *"This will make identifying return ballots easier for the Postal Service, election officials, and voters."*

### Recommendation #2
We recommend the **Chief Logistics and Processing Operations Officer** ensure mail processing facilities perform an accurate daily certification that they are clear of Election and Political Mail using the Operational Clean Sweep Search Checklist.

### Recommendation #3
We recommend the **Chief Logistics and Processing Operations Officer** clearly define roles, responsibilities, and oversight to ensure that the Political and Election Mail Audit Checklist is completed; and define timeframes for completion during election season.

### Recommendation #4
We recommend the **Chief Logistics and Processing Operations Officer** ensure mail processing facilities use and maintain the standardized Election and Political Mail log for each operation.

### Recommendation #5
We recommend the **Chief Logistics and Processing Operations Officer** implement best practices identified during our audit and continue educating election officials on identified best practices to increase nationwide Election and Political Mail readiness.

## Management's Comments

Management generally agreed with the findings and recommendations 2 through 4. Management partially agreed with recommendations 1 and 5. See Appendix C for management's comments in their entirety.

Regarding finding 1, management stated that each item listed, with the exception of postmarking, are outside the authority and control of the Postal Service. Election officials in each state or jurisdiction are responsible for deciding whether to put tracking barcodes on ballot envelopes, proper mailpiece design, mailing dates, and maintaining updated voter addresses. Management added the Postal Service will do everything it can to deliver ballots on time and will commit additional resources in the weeks before the election.

Regarding finding 2, management stated they agree that the audited facilities did not fully comply with instructions for completing required checklists, logs, and audits.

Regarding recommendation 1, management stated they agree to continue ensuring that Election Mail, regardless of mail class, moves through the network expeditiously. Management added they will advance the processing of Election Mail Marketing Mail by utilizing available visibility tools. However, management disagreed with the recommendation to create a separate Election Mail product for the 2020 general election. Management stated the Postal Service does not have sufficient time to develop a new product and complete necessary regulatory reviews prior to the 2020 general election. Management added that undertaking

Case 3:20-cv-10753-MAS-ZNQ   Document 58-2   Filed 09/25/20   Page 45 of 57 PageID: 1290

such a significant change this close to the election would also likely cause unnecessary confusion. In subsequent correspondence with management, they agreed to evaluate adding a dedicated mail product for Election Mail after the 2020 general election. Management stated this action would involve the regulatory environment, so the actual adoption and implementation of the product is unknown at this time. Management stated that they would provide an update on the adoption and implementation status by September 30, 2021.

Regarding recommendation 2, management stated they will update the instructions for the daily all clear certifications to ensure the Operational Clean Sweep Search Checklist is used to validate the all clear check. The target implementation date is September 4, 2020.

Regarding recommendation 3, management stated they will assign defined roles, responsibilities, and oversight for the Political and Election Mail Audit Checklist and distribute it to the field, along with timeframes for completing the checklist during election season. The target implementation date is September 4, 2020.

Regarding recommendation 4, management stated they will redistribute the Election and Political Mail log and require all mail processing facility employees to use it. The target implementation date is September 4, 2020.

Regarding recommendation 5, management stated they partially agree with the recommendation. They agree that Political and Election Mail coordinators should work to obtain an estimate of volumes and drop-off dates in advance of an election. Management added they will also ask coordinators to obtain sample ballots to test ahead of the general election, but noted that election officials may not be able to correct issues found in a test if it's too close to the general election. Management also agreed they should use facility monitors to display Election and Political Mail information; however, they did not agree to implement best practices in areas outside of the Postal Service's control, such as election offices where independent contractors track ballots or colored ballot return envelopes for easy identification. Management stated the Postal Service will continue to educate election officials about its existing recommendations and best practices for both

tracking and increasing the visibility of ballots in the network. In subsequent correspondence with management, they stated they would implement these best practices and provided a target implementation date of September 4, 2020.

## Evaluation of Management's Comments

The OIG considers management's comments responsive to the recommendations and corrective actions should resolve the issues identified in the report.

Regarding recommendation 1, the OIG acknowledges that there is insufficient time before the next general election on November 3, 2020, for the Postal Service to create a separate Election Mail product. In subsequent correspondence with management, they agreed to evaluate adding a dedicated mail product for Election Mail after the 2020 general election. Therefore, we consider the Postal Service's planned actions to be responsive to the recommendation and will monitor the progress of implementing this separate Election Mail product.

Regarding recommendation 5, the OIG acknowledges that the Postal Service does not have the ability to implement best practices outside of its control. However, the Postal Service does have the ability to educate state and local election officials of these best practices during its extensive outreach. Management did agree that Political and Election Mail coordinators should work to obtain estimated volumes and mailing dates in advance of an election and obtain sample ballots to test ahead of the general election, and that facility monitors should be used to display Election and Political Mail information. Therefore, we consider the Postal Service's planned actions to be responsive to the recommendation.

All recommendations require OIG concurrence before closure. Consequently, the OIG requests written confirmation when corrective actions are completed. All recommendations should not be closed in the Postal Service's follow-up tracking system until the OIG provides written confirmation that the recommendations can be closed.

Case 3:20-cv-10753-MAS-ZNQ   Document 39-2   Filed 09/25/20   Page 46 of 57 PageID: 1251

# Appendices

Click on the appendix title below to
navigate to the section content.

Appendix A: Additional Information ................................................................................... 21
   Scope and Methodology ........................................................................................... 21
   Prior Audit Coverage ................................................................................................. 22
Appendix B: Postmark Requirements by State ................................................................. 23
Appendix C: Management's Comments .............................................................................. 25

# Appendix A: Additional Information

## Scope and Methodology

The scope of our audit was Election and Political Mail processing for the 2020 primary, special, and general elections. To accomplish our objective, we:

- Analyzed Postal Service data on Election and Political Mail service performance from April to June 2020, comparing to the same period in 2018.

- Reviewed the Postal Service's Election and Political Mail processing strategy, policies, procedures, and related documents and tools, including guidance provided on the Postal Service's Election and Political Mail website.

- Judgmentally selected and reviewed seven P&DCs, one from each Postal Service area, to assess actions taken in preparation of elections; best practices; compliance with Election and Political Mail policies; and opportunities for improvement. We selected the facilities based on their service performance scores from October 2018 to March 2020 and if elections were occurring within their service areas.

- Interviewed Postal Service Headquarters and area officials, and members of the Political Mail Strike/Strategy Team[36] and Political Mail Steering Committee[37], regarding actions taken in response to prior audits, challenges, lessons learned, and best practices in the processing of Election and Political Mail.

- Interviewed state election officials from Indiana, Oklahoma, and West Virginia regarding results, challenges, and lessons learned from vote by mail during the primary election.

*" Judgmentally selected and reviewed seven P&DCs, one from each Postal Service area."*

We conducted this performance audit from April through August 2020 in accordance with generally accepted government auditing standards and included such tests of internal controls as we considered necessary under the circumstances. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our finding and conclusions based on our audit objective. We believe that the evidence obtained provides a reasonable basis for our finding and conclusions based on our audit objective. We discussed our observations and conclusions with management on August 18, 2020, and included their comments where appropriate.

We assessed the reliability of computer-processed data from IV by interviewing agency officials knowledgeable about the data, and comparing the data with other related data. We determined that the data were sufficiently reliable for the purposes of this report.

---

36  The Political Mail Strike/Strategy Team works closely with Postal Service operations and major mailers, and communicates and shares information with customers at the federal, state, and local levels.
37  The Political Mail Steering Committee is a cross-functional team that began in 2012 to address concerns from members of Congress, state election officials, mailers, and customers about network rationalization and its perceived impact on Election and Political Mail.

## Prior Audit Coverage

| Report Title | Objective | Report Number | Final Report Date | Monetary Impact |
|---|---|---|---|---|
| *Management Alert - Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* | Determine the cause of delayed ballot mail in the Milwaukee, WI P&DC service area for the spring election and presidential preference primary of April 7, 2020. | 20-235-R20 | 7/7/2020 | None |
| *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* | Evaluate the Postal Service's performance in processing Election and Political Mail for the 2018 midterm and special elections. | 19XG010NO000-R20 | 11/4/2019 | None |
| *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections* | Evaluate the Postal Service's readiness for timely processing of Election and Political Mail for the 2018 Midterm Elections. | NO-AR-18-007 | 6/5/2018 | None |

↰ BACK to COVER

# Appendix B: Postmark Requirements by State

Postmarking provides an official date stamp for ballots, but ballot postmarking policies vary widely by each state. One state, Louisiana, does not require a postmark but does require mailed ballots to be received the day before the election. Another 28 states require mailed ballots to be received by close of election day with no postmark requirement. Finally, 21 states and the District of Columbia have various postmark deadlines that allow mailed ballots to be received on election day or 1 to 21 days after the election and still be counted (see Figure 6 and corresponding Table 6). Of these, Alabama, Iowa, North Dakota, Ohio, and Utah require ballots to be postmarked the day before the election, while the others require the ballots to be postmarked by election day.

**Figure 6. State Postmark and Deadline Requirements for Returning Ballots**



- 🟦 Must be Received Before Election Day
- 🟩 Must be Received By Election Day
- 🟪 Post-Election Deadline
- ⊚ Postmark Required

Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

↰ BACK to COVER

**Table 6. States with Postmark Requirement and When Ballot Must be Received**

| Election Day | Days After Election Day | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 5 | 6 | 7 | 10 | 14 | 17 | 21 |
| AL[38] | TX | NJ | KS, MA, NC, VA | MS | IA, ND, WV | DC, MN, NV, NY | AK, MD, OH | IL, UT | CA | WA |

Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

---

38  Ballots mailed in Alabama must be postmarked prior to Election Day, and received by mail no later than noon on election day.

# Appendix C: Management's Comments

David E. Williams
Chief Logistics And Processing Operations Officer
Executive Vice President


**UNITED STATES POSTAL SERVICE**

August 27, 2020

LAZERICK POLAND
DIRECTOR AUDIT OPERATIONS

SUBJECT:  Project Number 20-225-DRAFT
Processing Readiness of Election and Political Mail During the 2020
General Election

Thank you for the opportunity to review and comment on the Office of Inspector General (OIG) audit, *Processing Readiness of Election and Political Mail During the 2020 General Election*.  The audit found that the timely delivery of Election and Political Mail is necessary to ensure the integrity of the U.S. election process, and that there is an increased risk that Election and Political Mail sent to voters mail may not be delivered timely when mailers, states, and election boards do not follow the Postal Service's recommended best practices to prepare, process, and track such mail.  The audit also made recommendations to improve compliance with certain checklist, audit, and log procedures for Election and Political Mail.

Management largely agrees with the audit's findings and recommendations, and we reiterate our commitment to efficiently process the nation's Political and Election Mail and to timely deliver such mail.  We understand, and continue to take great pride in, our important role in the electoral process.  As the audit suggests, the success and integrity of the election depends on close coordination within the organization and partnerships and cooperation between the Postal Service and state election officials, and also requires ensuring that voters have a general understanding of how the mail works.  To that end, we will continue reiterating our basic message throughout the election season:  that voters who choose to participate in the upcoming elections by mail (1) request their ballots as early as possible, but at least fifteen days before Election Day, and (2) mail their completed ballots at least seven days before the election.  We will continue to leverage partnerships and conduct outreach so that voters receive this basic message.

However, we disagree with OIG's recommendation that the Postal Service should create a new Election Mail product for the 2020 General Election. The Postal Service also does not agree that it should be responsible for those recommendations or findings that fall under the ultimate control of election officials, and, therefore, are outside of the Postal Service's authority.

Finding # 1: Stakeholder-Related Election Mail Issues

Management largely agrees with the intent of the audit's findings on Stakeholder-Related Election Mail Issues.  However, each of the listed findings, with the exception of postmarking, is outside the authority and control of the Postal Service.  Election officials in each state or

475 L'Enfant Plaza SW
Washington DC 20260-0061
WWW.USPS.COM

- 2 -

jurisdiction are ultimately responsible for mailpiece design, mailing dates, maintaining updated voter addresses, and deciding whether to include an Intelligent Mail barcode or other tracking technology. On each of these matters, the Postal Service makes strong recommendations to assist election officials, but the ultimate responsibility for choosing to adopt our recommendations lies with the election officials, not the Postal Service.

The Postal Service has clearly and repeatedly made recommendations to election officials to include the Intelligent Mail Barcode on all Election Mail envelopes, including ballot envelopes, and to consult with a Mailpiece Design Analyst before printing Election Mail envelopes. These recommendations were made in the 2020 Official Election Mail Kit (Kit 600), which was distributed to 11,500 election officials in March; the General Counsel's letter in May to local and state election officials and state party officials, highlighting key aspects of Election Mail delivery processes; and during our outreach meetings. A Mailpiece Design Analyst has also been assigned to each state to help work with election officials to design proper pieces to aid processing. Despite the Postal Service's extensive outreach efforts, election officials have the final decision regarding whether to use barcode mail tracking technology on their ballots, and regarding the final design for ballot envelopes— including using designs that have been deemed "Not Recommended" or "Disapproved" by a Mailpiece Design Analyst.

The Postal Service shares OIG's concern that mailers, election boards, and voters are likely to mail Election and Political Mail too close to an election. The Postal Service will do everything it can to deliver ballots on time, and will commit additional resources to that effort in the weeks before the election, but we are urging the public to plan ahead and act early. The July letters from our General Counsel were intended to ensure that election officials and voters are mindful of how the mail works, since state election deadlines often do not consider our delivery standards. This awareness is particularly important given the anticipated increase in mail-in voting during the COVID-19 pandemic, especially in those jurisdictions that are less experienced with handling high volumes of mail-in ballots and that are trying to implement new election rules and requirements.

As noted above, our key recommendations are that voters who choose to use the mail to participate in the election should (1) request their ballot at least fifteen days before the election, to ensure that they have enough time to receive the ballot, complete it, and then mail it back to the elections office, and (2) place their completed ballot in the mail at least seven days prior to the election. While we will continue to stress these recommendations, the Postal Service does not control when election officials or voters enter mail into the mailstream.

The Postal Service also understands that each state has its own election laws, including whether or not a mail-in ballot must be postmarked by a certain date to be counted. In recognition of the importance that the election laws in some states place on postmarks, it has been the Postal Service's policy to postmark all ballots, regardless of the postage-payment method. The Postal Service has supported this policy by convening a Postmark Team that has worked to identify and correct potential process deficiencies; and has updated Processing Operations Management Orders, Stand Up Talks, and Standard Work Instructions. Additionally, the Postal Service has assigned Ballot Monitors in every processing facility to monitor the postmarking process and ensure all processes are being adhered to properly with a goal to minimize any missed postmarks on ballots. Further, to

- 3 -

increase the operational likelihood that a mailpiece will receive a legible postmark, we advise election officials to use automation-compatible, letter sized envelopes for mail-in ballots. Voters should also be aware of posted collection times on collection boxes and the Postal Service's retail facilities. Ballots deposited after the last posted collection time will not be picked up, or postmarked, until the following business day. If voters choose to mail their completed ballot back to election officials, we recommend they do so at a blue collection box, their residential mailbox, or at one of the Postal Service's retail facilities.

Finally, while the Postal Service understands the importance of quality, up-to-date voter address lists, maintenance of such lists is completely controlled by election officials.

Finding #2:  Readiness for Timely Processing

Management agrees with the finding on Readiness for Timely Processing. As noted below, we agree that the audited facilities did not fully comply with instructions for completing required checklists, logs, and audits. The Postal Service will update and reissue instructions for these items, and certify full compliance in completing required checklists, logs, and audits. We will also ensure the official log sheet is used in lieu of local modifications.

In addition, as noted above, the Postal Service has undertaken actions to improve the operational likelihood that ballot mail will receive a postmark. The Postal Service will update the OIG when a decision is made on how to handle mail found in a delivery unit that has not been postmarked.

Recommendation 1

OIG recommends the Chief Logistics and Processing Operations Officer leverage established partnerships with state and local election officials to work toward creating a separate, simplified mail product exclusively for Election Mail that would support uniform mail processing, including mandatory mailpiece tracking and proper mailpiece design. Until this new product is developed, continue to prioritize the processing of election mail consistent with past practices.

Management Response

Management partially agrees with the intent of this recommendation. Management agrees to continue ensuring that all Election Mail, of whatever class it is entered, moves expeditiously through our network, consistent with our past practices. We do this by primarily by advancing Election Mail Marketing Mail volume through the processing system quickly and by utilizing the available visibility tools. As noted in the audit, near Election Day the Postal Service will also separately undertake herculean efforts outside of our normal procedures to make sure ballots meet state deadlines, even where they are mailed close to or on Election Day. We will continue these efforts in this election, and will devote additional standby resources to ensure the timely delivery of Election Mail as needed.

To be clear, although Election Mail Marketing Mail volume often receives a speed of delivery similar to First-Class Mail, the Postal Service does not literally treat Marketing Mail as First-Class Mail. As an example, First-Class Mail, unlike Marketing Mail, is sealed against inspection and includes automatic forwarding. The Postal Service cannot unilaterally

- 4 -

reclassify Marketing Mail volume as First-Class Mail. As stated in the 2019 Management Response to NO-AR-19, *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections Audit*, the Postal Service handles Election and Political Mail "in accordance with the level of service for which postage has been paid." However, in terms of delivery speed itself, we continue to recognize the importance and time-sensitivity of Election Mail, and do advance Election Mail Marketing Mail volume through the system expeditiously such that the delivery timeframes often match those of Election Mail entered as First-Class Mail. We will continue this practice.

We disagree with the recommendation to create a separate Election Mail product for the 2020 General Election. We understand that the purpose of this investigation is to recommend actions that can be implemented for the 2020 General Election. The Postal Service does not have sufficient time to develop a new product and complete the necessary regulatory reviews prior to the 2020 General Election. Even if the Postal Service could complete the required regulatory reviews prior to November 3, 2020, such review could not be completed before election officials finalize their mailpieces and begin sending them to voters. Undertaking such a significant change this close to the election would also likely cause unnecessary confusion.

<u>Target Implementation Date</u>

Completed.

<u>Recommendation 2</u>

OIG recommends the Chief Logistics and Processing Operations Officer ensure mail processing facilities perform an accurate daily certification that they are clear of Election and Political Mail using the Operational Clean Sweep Search Checklist.

<u>Management Response/Action Plan</u>

Management agrees with this recommendation. We will update the instructions for the All Clear checks to ensure that the Operational Clean Sweep Search Checklist is used to validate the All Clear check before submission.

<u>Target Implementation Date</u>

September 4, 2020

<u>Responsible Official</u>

████████  Director Election Mail

<u>Recommendation 3</u>

OIG recommends the Chief Logistics and Processing Operations Officer clearly define roles, responsibilities, and oversight to ensure that the Political and Election Mail Audit Checklist is completed; and define timeframes for completion during election season.

- 5 -

Management Response/Action Plan

Management agrees with this recommendation.  Defined roles, responsibilities, and oversight for the Political and Election Mail Audit Checklist will be assigned and distributed to the Field, including timeframes for completion during the election season.

Target Implementation Date

September 4, 2020

Responsible Official

█████████ Director Election Mail

Recommendation 4

OIG recommends the Chief Logistics and Processing Operations Officer ensure mail processing facilities use and maintain the standardized Election and Political Mail log for each operation.

Management Response/Action Plan

Management agrees with this recommendation.  While some processing centers have modified the Election and Political Mail log for their local teams over the past several years, the Postal Service will redistribute the original log and require all processing centers to use the official version.

Target Implementation Date

September 4, 2020

Responsible Official

█████████ Director Election Mail

Recommendation 5

OIG recommends the Chief Logistics and Processing Operations Officer implement best practices identified during our audit and continue educating election officials on identified best practices to increase nationwide Election and Political Mail readiness.

Management Response/Action Plan

Management partially agrees with this recommendation. The Postal Service has engaged in extensive outreach with state and local election officials to educate them on the Postal Service's recommendations and best practices and will continue these outreach efforts through the 2020 General Election.  Management agrees that Political and Election Mail Coordinators should work to obtain an estimate of volumes and drop off dates in advance. Additionally, we will also ask Coordinators to obtain sample ballots to test ahead of the

- 6 -

General Election. However, it should be noted that the Postal Service and election officials may not be able to remedy all issues found in a test close to the General Election. Management also agrees that Informed Facility monitors should be used to display Election and Political Mail information, including key dates.

However, management does not agree to implement the best practices in areas outside of the Postal Service's control. Specifically, Management does not agree on the recommended best practices of using independent contractors to track ballots or using colored absentee ballot return envelopes to make identifying ballots easier. Instead, the Postal Service will continue to educate election officials about its existing recommendations and best practices for both tracking and increasing the visibility of ballots in our network. The Postal Service recommends that election officials include the Intelligent Mail barcode on all Election Mail, which can provide election officials near-real time tracking information and other intelligence through Informed Visibility Mail Tracking & Reporting data. The Postal Service also recommends the use of the Official Election Mail logo and Tag 191 to identify ballots.


David E. Williams
Chief Logistics and Processing Operations Officer
and Executive Vice President


cc:    Manager, Corporate Audit Response Management



**OFFICE OF**
**INSPECTOR**
**GENERAL**
**UNITED STATES POSTAL SERVICE**

Contact us via our Hotline and FOIA forms.
Follow us on social networks.
Stay informed.

1735 North Lynn Street
Arlington, VA 22209-2020
(703) 248-2100

For media inquiries, contact Agapi Doulaveris
Telephone: 703-248-2286
adoulaveris@uspsoig.gov

