GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendant Tahesha Way*

By:   Matthew J. Lynch (045952011)
      Deputy Attorney General
      (609) 376-2964
      matthew.lynch@law.njoag.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., REPUBLICAN NATIONAL COMMITTEE, NEW JERSEY REPUBLICAN STATE COMMITTEE, | Hon. Michael A. Shipp, U.S.D.J. |
| Plaintiffs, | Civil Action No. 20-10753 |
| v. | **CIVIL ACTION** |
| TAHESHA WAY, in her official capacity as Secretary of State of New Jersey, | **(ELECTRONICALLY FILED)** |
| Defendant. | |

**DECLARATION OF BETH A. McGUCKIN IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1.    I am the Co-Supervisor for the Ocean County Board of Elections

(Board). I have been employed in this position since 2006. My job duties include

assisting the Board with the canvassing and counting of all ballots cast in Ocean County, including all vote by mail (mail-in) ballots and provisional ballots.

2.     In the July 7, 2020 Primary Election, the Board received in excess of 90,000 mail-in ballots and 12,390 provisional ballots.

3.     For comparison purposes, for the June 2016 Primary Election, the Board counted a total of approximately 5,928 mail-in and 278 provisional ballots.

4.     On the morning of July 8, 2020, the Board picked up approximately 4,100 mail-in ballots from the United States Postal Service (USPS) that USPS confirmed had been sent on or before July 7, 2020.  This included 800 mail-in ballots that USPS later stated had postmark dates of July 8, 2020.

5.     On July 8, 2020, the Board received correspondence from USPS confirming that certain mail-in ballots delivered to the Board on the morning of July 8, 2020 and bearing postmarked dates of July 8, 2020 had in fact been received by USPS on or before July 7, 2020.

6.     The correspondence also confirmed that certain mail-in ballots were in possession of USPS on the morning of July 8, 2020 that did not have postmarks. USPS postmarked those ballots with a July 8, 2020 date and delivered them to the Board on July 8, 2020.

7.     USPS stated that based on its operational processes, it believed that the mail-in ballots located at a delivery unit on the morning of July 8, 2020 and delivered later that same day, would have been received by USPS on or before July 7, 2020.

8.     Under P.L 2020, c. 72 (codified as N.J. Stat. Ann. §19:63-31), the General Election will be conducted largely through mail-in ballots and provisional ballots and all otherwise valid ballots postmarked on or before November 3, 2020, and received by the Board no later than November 10, 2020 at 8:00 p.m. shall be counted. P.L. 2020, c. 72, §2, ¶¶a, m.

9.     In order to ensure that no more than one vote per voter is counted, the review of provisional ballots cannot begin until after 8:00 p.m. on November 10. This is necessary to ensure that a provisional ballot is not counted from a voter who also submitted a mail-in ballot.

10.     The Board cannot seek any extension of time to canvass and count ballots or to report the results for the meeting of the county Board of Canvassers, which must occur on or before November 20, 2020.  P.L. 2020, c. 72, §2, ¶p.

11.     For the November 2020 General Election, approximately 420,000 mail-in ballots will be sent to Ocean County voters.  Based on anticipated turnout, the Board estimates that it could receive around 320,000 returned mail-in ballots by November 10, 2020 at 8:00 p.m.

12.     Due to the drastically increased number of mail-in and provisional ballots to be received by the Board and the limited time provided for the review process for provisional ballots, the Board will have to begin canvassing mail-in ballots prior to Election Day in accordance with P.L. 2020, c. 72, §2, ¶m in order to ensure that all ballots received by the Board are canvassed and counted before November 20.

13.     If the Board cannot begin canvassing ballots prior to Election Day, it would need to hire and train additional staff members to review, canvass, and count ballots in order to ensure counting is completed prior to the November 20 deadline. Current staff will suffice if employees can begin canvassing mail-in ballots early. But reversing course this close to Election Day would disrupt the Board's administration of the election as it would have a minimal amount of time – just a few weeks, maybe even mere days – to recruit and train new staff while simultaneously doing all of its other duties to prepare for the election. The need for social distancing and sanitation measures at Board facilities this year makes all of these tasks – recruitment, training, and canvassing – even more difficult.

14.     Without early counting, it would be difficult, if not impossible, to ensure that all votes are counted within the statutory timeframe.

15.     The Board shall ensure the security and secrecy of any mail-in ballots canvassed prior to Election Day, including by implementing procedures such as the

following: the Ballots that are delivered to the drop boxes are picked up daily by both a Republican and Democrat and transported to the Board and processed. Once the ballots are processed and the signatures have been deemed matches, they are placed in a container and secured in a locked room. Once the Board is ready to start counting the ballots, each town's ballots are removed from the secured room by both a Republican and Democrat. The certificates are then removed from the ballots, they are transported to the counting room by both a Republican and Democrat and counted. Once they are counted they are placed back in their container labeled by town and marked as counted and placed back into a locked room. This process is also done the same way for ballots that are delivered by USPS and in person drop off. The password is protected and the room with the readers are always under lock and key. The room has two locks, one key is in the possession of a Republican and the other is in the possession of a Democrat.

16.     Board staff has been made aware that they are prohibited from disclosing the contents of any mail-in ballot or the results of ballot canvassing prior to the close of polls on Election Day and that knowingly disclosing to the public the contents of a mail-in ballot prior to the closing of polls is a crime of the third degree. P.L. 2020, c. 72, §4.

17.     The Board is also awaiting the issuance of guidance from the Division of Elections on maintaining the confidentiality and secrecy of mail-in ballots canvassed before Election Day.

18.     The homepage for the Ocean County Election Board has a link to the Ocean County Clerk's public website, which contains information for voters about the November 2020 General Election.  Ocean County Election Board, Homepage, http://www.co.ocean.nj.us/oc/elections/ (last visited Sept. 22, 2020).

19.     The Ocean County Clerk's website states that all active registered Ocean County voters will receive a mail-in ballot for the November 2020 General Election; that mail-in ballots can be returned via USPS, in person to the Board, in person at voters' polling places, or in a secure ballot drop box; and that mail-in ballots must be returned no later than 8:00 p.m. on Election Day.  A true and correct copy of the Ocean County Clerk's Election Services website as of September 22, 2020, is attached hereto as Exhibit 1.

20.     The Board advises voters that they can return their mail-in ballot to the Board via USPS and that they must be returned no later than 8:00 p.m. on November 3. But if the provision of P.L. 2020, c. 72 that permits the Board to canvass ballots without a postmark that the Board receives no later than 48 hours after the closing of polls on Election Day, then the Board may have to revise its advice to specify to voters that mailing their ballots on Election Day might not guarantee it will be

accepted by the Board if it lacks a postmark. The Board would have only a short amount of time to inform voters of an important change to election procedures. Voters might be confused or frustrated by receiving new instructions so close to the election, and staff might become inundated with calls from voters seeking clarification or explanation, disrupting staff preparations for the upcoming election.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:

Beth McGuckin, Supervisor