## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DONALD J. TRUMP FOR
PRESIDENT, INC.; et al.,

               Plaintiffs,

    v.

TAHESHA WAY,

            Defendant,

and

DCCC,

       Intervenor-Defendant.

Case No. 3:20-cv-10753-MAS-ZNQ

---

## DCCC'S BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) & 12(b)(6)

---

Angelo J. Genova
Rajiv D. Parikh
Michael Mondelli
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112

Marc E. Elias* (*Admitted pro hac vice*)
Kevin J. Hamilton* (*Admitted pro hac vice*)
Emily R. Brailey* (*Admitted pro hac vice*)
Sarah R. Gonski* (*Admitted pro hac vice*)
Mary N. Beall* (*Admitted pro hac vice*)
**PERKINS COIE LLP**
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200

*Counsel for DCCC*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................1

LEGAL STANDARD......................................................................................................5

ARGUMENT ..................................................................................................................7

   I.    The Motion should be heard on an expedited basis. ..................................7

   II.   Plaintiffs do not have standing. ................................................................7

     A.  Plaintiffs have not established organizational standing.............................8

     B.  Plaintiffs cannot establish representational standing................................10

   III.   Plaintiffs fail to state a claim. .................................................................12

     A.  Counts I and II. .......................................................................................12

     B.  Counts III and IV should be dismissed because the asserted constitutional violations are not cognizable. ..................................................................20

CONCLUSION ...............................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Alcantara v. Deutsche Bank Nat. Tr. Co.*,
　No. 2:12-CV-04690 DMC, 2013 WL 1222666 (D.N.J. Mar. 25,
　2013) ....................................................................................................................2

*Am. Civ. Rights Union v. Martinez-Rivera*,
　166 F. Supp. 3d 779 (W.D. Tex. 2015) .............................................................12

*Am. Diabetes Ass'n v. U.S. Dep't of Army*,
　938 F.3d 1147 (9th Cir. 2019) ............................................................................9

*Anderson v. United States*,
　417 U.S. 211 (1974)....................................................................................21, 22

*Antonelli v. New Jersey*,
　310 F. Supp. 2d 700 (D.N.J. 2004) .....................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).....................................................................................6, 24

*Baker v. Carr*,
　369 U.S. 186 (1962).................................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)............................................................................................6

*Blunt v. Lower Merion Sch. Dist.*,
　767 F.3d 247 (3d Cir. 2014) ...........................................................................8, 9

*Bush v. Gore*,
　531 U.S. 98, 109 (2000)....................................................................................24

*Davis v. Well Fargo*,
　824 F.3d 333 (3d Cir. 2016) ...............................................................................6

*Democratic Nat'l Comm. v. Bostelmann*,
　No. 20-cv-249-wmc, ECF No. 538 (W.D. Wis. Sep. 21. 2020)........................19

*Foster v. Love*,
　522 U.S. 67 (1997).....................................................................................16, 18

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).............................................................................6, 7

*Gallagher v. New York State Bd of Elections*,
  No. 20 Civ. 5504 (AT), 2020 WL 4496849 (S.D.N.Y. Aug. 3,
  2020); ......................................................................................................19

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018).........................................................................10

*Harris v. Kellogg Brown & Root Servs., Inc*.,
  724 F.3d 458 (3rd Cir. 2013) .................................................................5

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)...............................................................................8

*Hennings v. Grafton*,
  523 F.2d 861 (7th Cir. 1975) ...............................................................22

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)..............................................................................10

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997*)* ...............................................................2

*In re Global Indus. Tech., Inc.*,
  645 F.3d 201 (3d Cir. 2009) ...................................................................9

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012) ..................................................................6

*League of Women Voters of Ohio v. Brunner*,
  548 F.3d 463 (6th Cir. 2008) ...............................................................24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).......................................................................6, 8, 11

*Martel v. Condos*,
  No. 5:20-cv-131, 2020 WL 5755289 (D. Vt. Sept. 16, 2020)............11

*Merck Sharp & Dohme Corp. v. Albrecht*,
  139 S.Ct. 1668 (2019).........................................................................12

*Millsaps v. Thompson*,
259 F.3d 535 (6th Cir. 2001) .................................................................14, 16, 18

*Minn. Voters Alliance v. Ritchie*,
720 F.3d 1029 (8th Cir. 2013) .....................................................................21, 23

*Paher v. Cegavske* (*Paher I*),
No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813 (D. Nev. Apr.
30, 2020) .......................................................................................................10, 21

*Paher v. Cegavske* (*Paher II*),
No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301 (D. Nev. May
27, 2020) .............................................................................................................12

*Pennsylvania v. Navient Corp.*,
967 F.3d 273 (3d Cir. 2020) ...............................................................................13

*Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*,
472 F.2d 121 (8th Cir. 1973) ..............................................................................21

*Powell v. Power*,
436 F.2d 84 (2d Cir. 1970) .................................................................................21

*Pub. Util. Dist. No. 1 v. IDACORP Inc.*,
379 F.3d 641 (9th Cir. 2004) ........................................................................14, 17

*Red Hawk Fire & Security LLC v. Siemens Indust. Inc.*,
449 F.Supp.3d 449 (D. N.J. 2020) ........................................................................6

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011) ...................................................................................8

*Republican Party of Pa. v. Cortés*,
218 F. Supp. 3d 396 (E.D. Pa. 2016).............................................................20, 23

*Reynolds v. Sims*,
377 U.S. 533 (1964).........................................................................................21, 22

*Roudebush v. Hartke*,
405 U.S. 15 (1972)...............................................................................................13

*Scaba v. Jetsmarter, Inc.*,
No. 18-17262 (MAS) (DEA), 2019 WL 3947510 (D. N.J. Aug. 21, 2019) ................................................................................................. 2

*Serpentfoot v. Rome City Comm'n*,
426 F. App'x 884 (11th Cir. 2011) .................................................... 21

*Short v. Brown*,
893 F.3d 671 (9th Cir. 2018) ........................................................ 22, 23

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ................................................................... 6, 8

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......................................................................... 8

*United States v. Florida*,
No. 4:12cv285-RH/CAS, 2012 WL 13034013 (N.D. Fla. Nov. 6, 2012) ........................................................................................... 12

*Voting Integrity Project, Inc. v. Bomer*,
199 F.3d 773 (5th Cir. 2000) ..................................... 14, 16, 18, 19

*Voting Integrity Project, Inc. v. Keisling*,
259 F.3d 1169 (9th Cir. 2001), *cert denied*, 535 U.S. 986 (2002) ............. 14, 16

*Warth v. Seldin*,
422 U.S. 490 (1975)......................................................................... 8

**STATUTES**

17 V.S.A. § 2546a .......................................................................... 15

15 Del. C. § 5510 ........................................................................... 15

2 U.S.C. § 1 ............................................................................. 13, 15

2 U.S.C. § 7 ............................................................................. 13, 15

3 U.S.C. § 1 ............................................................................. 13, 15

18 U.S.C. § 241 .............................................................................. 22

26 Okla. St. Ann. § 14-125 ............................................................. 15

10 Ill. Comp. Stat. 5/19-8(c) ...................................................................20

Alaska Stat. §15.20.201 ........................................................................15

Ariz. Stat. §§16–550, 16-551 ................................................................15

Ark. Stat. § 7-5-416................................................................................15

Cal. Elec. Code § 4103(b)(2) .................................................................20

Colo. Stat. § 1-7.5-107.5 .......................................................................15

Conn. Gen. Stat. § 9-150a .....................................................................15

F.S.A. § 101.68 ......................................................................................15

HRS §§ 15-9, 11-152 .............................................................................15

K.S.A. § 25-1134 ...................................................................................15

LSA-R.S. 18:1313 ..................................................................................15

Md. Code Regs. 33.11.03.08(3)(b)(ii) ..................................................20

Mont. Code Ann. § 13-13-241(7)(a) ......................................................15

N.C.G.S.A § 163-234..............................................................................15

N.C.G.S.A. § 163-230.1 .........................................................................15

*N.J.S.A.* 19:34-13 .....................................................................................4

*N.J.S.A.* 19-34-13(b) ..............................................................................15

*N.J.S.A.* 19:63-31(m)..........................................................................4, 15

N.M.S.A. § 1-6-14 ..................................................................................15

Neb. Rev. Stat. §32-1027 .......................................................................15

O.R.S. § 254.478 ....................................................................................15

Wash. Rev. Code § 29A.40.110(4) .........................................................20

West's Ann. Cal. Elec. Code § 15101 ....................................................15

vi

**OTHER AUTHORITIES**

EO 177 (Aug. 14, 2020) (https://bit.ly/30ZjBaj) ...................................................2, 3

Fed. R. Civ. P. 6(c)(1)(C) ...........................................................................................7

Fed. R. Civ. P. 12(b)(1).............................................................................................5

Fed. R. Civ. P. 12(b)(6).........................................................................................6, 23

New Jersey Assembly Bill 4475 ...........................................................................3, 17

U.S. Const. art. I, § IV, cl. 1 .............................................................................13, 14

U.S. Const. art. III .........................................................................................7, 8, 11

## INTRODUCTION

Through this action, Plaintiffs Donald J. Trump for President, Inc., the Republican National Committee, and the New Jersey Republican State Committee (collectively "Plaintiffs") seek to strike down laws enacted by our legislature to protect New Jersey's residents, make voting safer, and ensure that lawful voters are not inadvertently disenfranchised by unnecessary or impractical hurdles to the exercise of their rights. The legislation at issue was passed during an unprecedented public health crisis, was well within the legislature's powers to enact, and puts in place eminently reasonable provisions and procedures that are similar to laws that many other states had in place even before the pandemic. Nevertheless, Plaintiffs have filed this federal court action in response, and urge this Court to invalidate it.

Plaintiffs' Amended Complaint should be dismissed in its entirety. As a threshold matter, Plaintiffs do not and cannot satisfy the standing requirements necessary to properly invoke this Court's jurisdiction under Article III of the U.S. Constitution. That begins and ends this Court's inquiry as to all of Plaintiffs' claims and makes any further proceedings in this case unnecessary. But, even if jurisdiction was not an absolute bar, Plaintiffs have failed to state claims upon which relief could be granted. For this reason, as well, the Amended Complaint should be dismissed.

## BACKGROUND

In March 2020, in response to the COVID-19 pandemic, the Governor of New

1

Jersey—like many governors across the country—proclaimed a state of emergency. *See* Am. Compl., ECF No. 33 at ¶ 55 ("Am. Compl."). Five months later, to both protect and support the right of lawful New Jersey voters to vote during the ongoing pandemic, the Governor issued Executive Order 177 ("EO 177"). *Id.* at ¶ 64. Among other things, EO 177 required that "[t]he November General Election shall be conducted primarily via vote-by-mail ballots, which will be sent to all 'Active' registered voters without the need for an application to receive a vote-by-mail ballot." *Id.* And, voters will be provided meaningful opportunities to vote in person. *See* EO 177 (Aug. 14, 2020), available at https://bit.ly/30ZjBaj (last visited Oct. 2, 2020).[1]

On August 18, Plaintiffs filed this action seeking to invalidate EO 177 and block the Governor's appropriate and prudent efforts to safeguard the health and the right to vote of New Jersey voters. *See* Compl., ECF No. 1 ("Compl."). In their initial complaint, Plaintiffs alleged, among other things, that the Governor "is not the Legislature and thus cannot exercise legislative power" to protect the right of New Jersey residents to vote in the middle of a pandemic, because "the Elections Clause

---

[1] The Court can consider EO 177 without converting this motion into a motion for summary judgment because Plaintiffs refer to, quote from, and rely on EO 177 in their Amended Complaint. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997*)*; *Scaba v. Jetsmarter, Inc.,* No. 18-17262 (MAS) (DEA), 2019 WL 3947510, at *3 (D.N.J. Aug. 21, 2019); *Alcantara v. Deutsche Bank Nat. Tr. Co.*, No. 2:12-CV-04690 DMC, 2013 WL 1222666, at *2 (D.N.J. Mar. 25, 2013).

and the Electors Clause both vest the state Legislature with the power to legislate the manner of elections." *Id.* at ¶¶ 93, 108. In other words, Plaintiffs' position was that EO 177 was improper because the Governor strayed into an area more properly occupied by the Legislature.

Shortly thereafter, New Jersey's Legislature enacted A4475 (the "Election Law"), which "codified the provisions" of EO 177. Am. Compl. at ¶ 73. In other words, although Plaintiffs' initial contention that the Governor improperly acted to do what only the Legislature was entitled to do was itself wrong as a matter of law, that issue was addressed, making Plaintiffs' initial claims moot. In response, Plaintiffs did not dismiss their lawsuit. Instead, they pivoted, changing theories, and filed a brand new Amended Complaint alleging that, on second thought, the Legislature, too, could not properly act, based on Plaintiffs' contention that the Election Law "will violate eligible citizens' right to vote." *Id.* at ¶ 1. Plaintiffs' maneuvering is a transparent scramble to save their claims after the Legislature did exactly what Plaintiffs initially claimed the Legislature needed to do to implement the provisions of EO 177.

Plaintiffs' Amended Complaint challenges the following provisions of the Election Law: (1) a pre-canvassing provision that permits counties to begin canvassing mail ballots ten days before the election; (2) a presumption that mail ballots that are received within 48 hours of election day without a postmark are

timely; (3) a provision providing for mail ballots to be sent to all "Active" New Jersey voters, without requiring those voters to apply for a mail ballot; and (4) a provision that permits voters who do not return a mail ballot to vote in-person on November 3, 2020, by provisional ballot. *N.J.S.A.* 19:34-13; *N.J.S.A.* 19:63-31(m). The first is designed to address and alleviate the administrative burdens that will fall on New Jersey's elections administrators due to the uptick in voters who are seeking to vote by mail to avoid risking their health and the health of others. The second avoids the risk of rejection of ballots timely cast where the envelopes containing those ballots do not receive a postmark, through no fault of the voter. The third is necessary to ensure that New Jersey voters are able to safely vote and receive mail ballots in a timely fashion, especially given widely reported delays in mail service. And the fourth provides an option for in-person voting for those voters who choose not to return a ballot by mail. These are essential provisions for voting in the middle of a pandemic. Indeed, many states have long maintained similar laws even in pre-pandemic times, both to ensure that elections run smoothly and that voters are not unnecessarily burdened in their attempts to exercise the franchise.

Plaintiffs attempt to assert four claims. The first two claims are based on their contention that the pre-canvassing and postmark provisions are preempted by federal law—but there is no federal law governing pre-canvassing or postmark provisions. Plaintiffs' third claim challenges voting by mail based on vague and conclusory

4

allegations that providing mail ballots will lead to voter fraud, a contention that has been consistently rejected by courts throughout the nation. Finally, Plaintiffs attempt to allege an equal protection violation premised on a set of events that have not yet occurred and that would be contrary to existing law.

In short, Plaintiffs challenge the actions of the Governor and Legislature to protect the health and safety of New Jersey voters during the COVID-19 pandemic while also protecting the right to vote. By challenging these efforts, Plaintiffs are attempting to make voting in New Jersey more difficult and asking voters to choose between protecting their health and exercising their right to vote. Plaintiffs do so, moreover, despite the fact that they fail to meet Article III's threshold requirements to invoke the jurisdiction of this Court, and without any cognizable legal basis for pursuing the claims that they allege. For each of these reasons, the Amended Complaint should be dismissed.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing federal subject matter jurisdiction by a preponderance of the evidence. *Harris v. Kellogg Brown & Root Servs., Inc*., 724 F.3d 458, 464 (3rd Cir. 2013). Where, as here, a "facial" challenge is brought under Federal Rule of Civil Procedure 12(b)(1), the moving parties assert that the allegations contained in the complaint are "insufficient to invoke the subject matter jurisdiction of the court" and "does not dispute the facts alleged in the complaint."

*Red Hawk Fire & Security LLC v. Siemens Indust. Inc*., 449 F.Supp.3d 449, 458 (D. N.J. 2020) (internal quotations and citations removed) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 437, 358 (3d Cir. 2014) and *Davis v. Well Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Moreover, a plaintiff must demonstrate Article III standing for each form of relief sought. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must "take all of the factual allegations in the complaint as true," *id*. (citing *Twombly*, 550 U.S. at 555), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, in reviewing a Rule 12(b)(6) motion to dismiss, courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679, 681 (3d Cir. 2012).

## ARGUMENT

Plaintiffs' Amended Complaint should be dismissed because Plaintiffs lack standing to bring these claims and the Amended Complaint fails to state any claim for relief.

## I.      The Motion should be heard on an expedited basis.

For the reasons explained in more detail in DCCC's letter submitted on October 2, 2020 (ECF No. 68), DCCC respectfully requests that the Court enter the proposed Order to Show Cause setting an expedited briefing schedule for this motion. *See* Fed. R. Civ. P. 6(c)(1)(C). As explained in that letter, an expedited ruling is necessary because Plaintiffs refuse to disclose their intentions with respect to Counts III and IV of their Amended Complaint, including whether they will seek emergency relief on those claims in advance of Election Day and/or whether they intend to use those claims to ask this Court to invalidate the hundreds of thousands of mail ballots that are likely to be returned by New Jersey voters in this election as well as provisional ballots that are cast at polling places.

## II.     Plaintiffs do not have standing.

Article III standing is necessary for each form of relief sought by Plaintiffs. *Friends of Earth, Inc.*, 528 U.S. 167 at 185. To properly invoke federal jurisdiction, a plaintiff must demonstrate that (1) they are under an actual threat of suffering a concrete and particularized injury in fact to a legally protected interest that is "concrete and particularized;" (2) the injury is fairly traceable to the defendant's

conduct; and (3) it is likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan*, 504 U.S. 555, 560 (1992). Unsubstantiated allegations of "possible future injury" are not sufficient to satisfy Article III. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). Nor are injuries that are "conjectural or hypothetical." *Robins,* 136 S. Ct. 1540 at 1548.

The Plaintiffs in this case are not individuals, but rather organizations. They may only proceed with this case if they can establish direct standing based on injuries to their organizational interests consistent with the tests laid out by the U.S. Supreme Court and this Circuit for organizational standing, *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982), or representational standing to assert claims on behalf of their members, again, meeting specific requirements to establish such standing. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014); *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 710 (D.N.J. 2004).

Plaintiffs fall well short of alleging facts establishing standing under either theory in this case.

### A.    Plaintiffs have not established organizational standing.

To establish organizational standing, Plaintiffs must show how the challenged actions "perceptibly impair" their ability to provide services. *Blunt*, 767 F.3d at 285.

"[A]n organization may establish" an injury sufficient to support standing "if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question." *Am. Diabetes Ass'n v. U.S. Dep't of Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (second alteration in original) (quoting *Smith v. Pac. Props & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)). In addition, an organization must "show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Blunt*, 767 F.3d at 285 (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)).

The Trump Campaign offers no theory of organizational injury. Am. Compl. at ¶ 7. The two other plaintiffs merely allege, in conclusory fashion, that the Election Law will "confuse voters [and] undermine confidence in the electoral process" causing Plaintiffs "to divert resources." Am. Compl. ¶¶ 13, 16. Critically, Plaintiffs do not explain how providing ballots to *all* registered and active New Jersey voters, including Plaintiffs' supporters, will cause Plaintiffs to expend additional resources. Nor do Plaintiffs explain how or why they would need to expend resources in response to a postmark presumption. Because Plaintiffs fail to allege why or how they would need to divert resources to address the Election Law they fall well short of "alleg[ing] a 'specific, identifiable trifle of injury.'" *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210 (3d Cir. 2009) (citing *Bowman v. Wilson*, 672 F.2d 1145,

1151 (3d Cir. 1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686–90 n. 14 (1973))).

### B.  Plaintiffs cannot establish representational standing.

To establish representational standing, a plaintiff must show (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs have not satisfied this burden here.

Plaintiffs fail to allege that their members, or the voters with whom they associate, would have standing to sue. To the contrary, the "injuries" complained of are classic generalized grievances, insufficient to support standing. *See, e.g.*, *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) ("[T]he citizen's abstract interest in policies adopted by the legislature . . . is a nonjusticiable 'general interest common to all members of the public.'"); *Paher v. Cegavske* (*Paher I*), No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813, at *5 (D. Nev. Apr. 30, 2020) ("But Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter.").

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and

10

every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also id.* at 575-76 ("[A]n injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable . . . [and] cannot alone satisfy the requirements of Art. III without draining those requirements of meaning.") (quotation marks and citation omitted); *see also Martel v. Condos*, No. 5:20-cv-131, 2020 WL 5755289 at *3 (D. Vt. Sept. 16, 2020) ("Cases in which plaintiffs assert 'generalized grievances' of unlawful governmental action are commonly dismissed on standing grounds.").

Plaintiffs' alleged injuries are not only general but also wholly "conjectural" and speculative, and neither "actual [n]or imminent." *Lujan*, 504 U.S. at 560 (quotation marks and citation omitted). Their claims that pre-canvassing will somehow influence other states' elections (despite the fact that New Jersey has *criminalized* any publication of any pre-canvassing results, and there is no reason to project that elections officials will risk their liberty to violate those laws), that any ballots voted after the election will be counted, or that the Election Law will result in fraudulent ballots being counted purportedly "diluting" the ballots of validly cast ballots are supported by nothing more than implausible and entirely speculative assertions, which do not confer Article III standing. Courts across the country have

11

rejected nearly identical arguments by Plaintiffs and other affiliated groups in similar cases. *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution [is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact."); *Paher v. Cegavske* (*Paher II*), No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301, at *4, n.12 (D. Nev. May 27, 2020) ("Plaintiffs rely on numerous articles and studies to support their contentions that voting by mail leads to voter fraud. The articles and studies are simply insufficient to establish that sending mail-in ballots to Nevada voters will result in voter fraud that particularly disenfranchises Plaintiffs as voters."); *cf. United States v. Florida*, No. 4:12cv285-RH/CAS, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (rejecting True the Vote's motion to intervene under Rule 24 based on the same theory of vote dilution because its "asserted interests are the same . . . as for every other registered voter in the state").

Plaintiffs fail to establish representational standing. Because Plaintiffs lack standing, the Amended Complaint should be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM.

### A.   Counts I and II.

Plaintiffs' claims that that the pre-canvassing and postmark provisions of the Election Law are preempted by federal law are unsustainable as a matter of law and should be dismissed. Issues of preemption are a question of law. *Merck Sharp &*

*Dohme Corp. v. Albrecht*, 139 S.Ct. 1668, 1676, 1680 (2019). Under traditional preemption analysis, courts are guided by two principles: "First, the intent of Congress is the 'ultimate touchstone' of preemption analysis....'Second, we start with the basic assumption that Congress did not intend to displace state law.'" *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 288 (3d Cir. 2020). Because states are independent sovereigns, the "presumption applies with particular force when the state is exercising its police power." *Id.* Indeed, "[u]nless Congress acts, [the Constitution] empowers *the States* to regulate the conduct of [federal] elections." *Roudebush v. Hartke*, 405 U.S. 15, 24 (1972) (emphasis added). Here, Plaintiffs contend that the pre-canvassing and postmark provisions are preempted by the following federal statutes: 3 U.S.C. § 1 providing the timing for the appointment of electors for President and Vice President; 2 U.S.C. § 7 providing that "[t]he Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election . . . of Representatives and Delegates to the Congress"; and 2 U.S.C. § 1 providing the timing for the election of U.S. Senators. *See* Am. Compl. ¶¶ 109–17. However, these federal laws governing *the timing* of elections and election-related activities do not and cannot preempt New Jersey law governing *the manner* of elections, a task that, in the absence of federal law, the Constitution leaves to the states. *See* U.S. Const. art. I, § IV, cl. 1. Counts I and II should, accordingly, be dismissed.

## 1.   The pre-canvassing provision does not conflict with and is not preempted by federal law.

The Elections Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but Congress may at any time make or alter such Regulations, except as to the Place of chusing Senators." U.S. Const. art. I, § IV, cl. 1. "[A] state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has" one—and *only* one—"limitation: the state system cannot *directly conflict* with federal election laws on the subject." *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000) (emphasis added).

There is no federal law proscribing pre-canvassing of mail ballots. As a result, there is no "actual conflict between federal and state law" that would lead to preemption. *Pub. Util. Dist. No. 1 v. IDACORP Inc.*, 379 F.3d 641, 649–50 (9th Cir. 2004) (quoting *Gadda v. Ashcroft*, 363 F.3d 861, 871 (9th Cir. 2004)); *see also Millsaps v. Thompson*, 259 F.3d 535, 546 (6th Cir. 2001) (finding no preemption where "compliance with both [the challenged law] and the federal election day statutes does not present 'a physical impossibility'") (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)). And while "Congress has the authority to compel states to hold [federal] elections on the dates it specifies," *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1170 (9th Cir. 2001), *cert denied*, 535 U.S. 986 (2002)—specifically, "the Tuesday next after the first Monday in

November," 3 U.S.C. § 1; *accord* 2 U.S.C. §§ 1, 7, nothing in the Election Law changes the date of the general election.

Indeed, the pre-canvassing provision is wholly consistent with federal law as it merely permits counties to "begin opening the inner envelopes and canvassing each mail-in ballot from the inner envelopes no earlier than ten days prior to the day of the election." *N.J.S.A.* 19:63-31(m). Any information gained during this time is secret and remains confidential, and early disclosure of that information carries serious criminal penalties. *N.J.S.A.* 19-34-13(b). In enacting this provision, moreover, New Jersey joins at least 19 other states that allow for the pre-canvassing of ballots, many of which allow for much longer pre-canvassing periods than the one that the New Jersey legislature has approved.[2] This pre-canvassing provision was enacted in direct response to concerns that, with the significant expansion of vote-by-mail in New Jersey, it was necessary to enable elections officials to engage in

---

[2] *See* Alaska Stat. §15.20.201 (counting can begin seven days before election day); Ariz. Stat. §§16–550, 16-551 (14 days before); Ark. Stat. § 7-5-416 (seven days before); West's Ann. Cal. Elec. Code § 15101 (19 days before in certain jurisdictions); Colo. Stat. § 1-7.5-107.5 (15 days); Conn. Gen. Stat. § 9-150a (at discretion of registrars); 15 Del. C. § 5510 (Friday before election day); West's F.S.A. § 101.68 (22 days before); HRS §§ 15-9, 11-152 (upon receipt); K.S.A. § 25-1134 (prior to election day); LSA-R.S. 18:1313 (before election day); Mont. Code Ann. § 13-13-241(7)(a) (one day before if using a counting machine); Neb. Rev. Stat. §32-1027 (24 hours before); N.C.G.S.A. §§ 163-230.1, 163-234 (two weeks before); N.M.S.A. § 1-6-14 (two weeks depending on jurisdiction); 26 Okla. St. Ann. § 14-125 (earlier than election day with Secretary of State approval); O.R.S. § 254.478 (seven days before); 17 V.S.A. § 2546a (day before); LSA-R.S. 18:1313 (before election day).

pre-processing of ballots so as not to be overwhelmed and potentially delay elections results. Plaintiffs' mischaracterizations of the law aside, the pre-canvassing provision in no way changes the date of the General Election.

The Election Law is readily distinguishable from the law at issue in *Foster v. Love*, 522 U.S. 67 (1997), cited by Plaintiffs in the Amended Complaint. In *Foster*, the Supreme Court considered "Louisiana's 'open primary' statute," which "provide[d] an opportunity to fill the offices of United States Senator and Representative" during October well before the date mandated by Congress, "without any action to be taken on federal election day." *Id.* at 68–69. The Court concluded that this system "runs afoul of the federal statute" because it permitted federal elections to be entirely consummated before the statutorily mandated election day. *Id.* at 69, 72.

In contrast, nothing in the pre-canvassing provision sets a competing date on which "a contested selection of candidates for a [federal] office [] is concluded as a matter of law." *Id.* at 72. And, "[a]lthough voting takes place, perhaps most voting, prior to election day, the election is not 'consummated' before election day [where] voting still takes place on [election] day." *Keisling*, 259 F.3d at 1176; *see also Millsaps*, 259 F.3d at 546 (holding "so long as a State *does not conclude an election prior to federal election day*, the State's law will not 'actually conflict' with federal law." (emphasis added)); *see also Bomer*, 199 F.3d at 776 ("Because the election of

federal representatives in Texas is not decided or 'consummated' before federal election day, the Texas scheme is not inconsistent with the federal election statutes as interpreted by the court in *Foster*.").

The pre-canvassing provision does not consummate the election prior to election day. Voters who wish to vote in-person can do so by through the date of the general election. Indeed, the Election Law's postmark provision (discussed *infra*) *requires* local election officials to count ballots postmarked on or before November 3—the date set by federal statute for the general election. *See* Election Law § 2(m). Thus, the Election Law preserves the date of the general election, while permitting counties to perform pre-canvassing—an essential task this year due to the COVID-19 pandemic and the dramatic increase expected in mail ballots.

Because the pre-canvassing provision does not conflict with or violate federal law it is not preempted. Count I therefore states no claim and should be dismissed.

### 2. The postmark presumption does not violate and is not preempted by federal law.

The Election Law provides a presumption that a ballot received within two days of election day without a postmark was timely mailed on or before election day. As with the pre-canvassing provision, there is no federal law governing what states should do if a ballot arrives without a postmark. Because Congress has *not* codified a competing law, there is no "actual conflict between federal and state law" that would lead to preemption. *Pub. Util. Dist. No. 1*, 379 F.3d at 649–50 (quoting

17

*Gadda*, 363 F.3d at 871); *see also Millsaps*, 259 F.3d at 549 (finding no preemption where "compliance with both [the challenged law] and the federal election day statutes does not present 'a physical impossibility'") (quoting *Fla. Lime & Avocado Growers*, 373 U.S. at 142–43).

Plaintiffs again cite *Foster* in support of this claim, but the decision in *Foster* is equally inapplicable here. As one post-*Foster* appellate court concluded, "we cannot conceive that Congress intended the federal election day statutes to have the effect of impeding citizens in exercising their right to vote." *Bomer*, 199 F.3d at 777; *accord Millsaps*, 259 F.3d at 545 ("[A]ll courts that have considered the issue have viewed statutes that facilitate the exercise of the fundamental right of voting as compatible with federal statutes."). This conclusion follows from *Foster* itself, in which the Supreme Court recognized that, in enacting the federal statutes that establish the election day in question, Congress was motivated by protecting voters from burdens on their voting rights—specifically, the burden that would follow if "citizens [were] forced to turn out on two different election days to make final selections of federal officers in Presidential election years." *Foster,* 522 U.S. at 73.

There is no justifiable way to read *Foster*, or the federal statutes in question, to displace a state's power to dictate the *manner* by which states determine whether a mail-in ballot missing a postmark has been validly cast. But that is precisely what the Election Law does. And it does so by creating an entirely reasonable presumption

18

that, if a ballot arrives in the mail without a postmark within 48 hours of November 3, it must have been mailed by or on November 3. In doing so, moreover, New Jersey "further[s] the important federal objective of reducing the burden on citizens to exercise their right to vote…without thwarting other federal concerns," *Bomer*, 199 F.3d at 777, by ensuring that voters who cast ballots on or before election day are not arbitrarily disenfranchised simply because the postal service fails to affix a legible postmark.

Conspicuously, Plaintiffs cite no case where postmark presumptions or similar regulations were found to conflict with federal law. In fact, the law on this point is contrary to Plaintiffs' argument. In *Gallagher v. New York State Bd of Elections*, a federal court embraced a presumption "that absentee ballots received [within days of election] were [] timely cast despite the absence of a postmark." No. 20 Civ. 5504 (AT), 2020 WL 4496849, at *22 & n.5 (S.D.N.Y. Aug. 3, 2020); *see also Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, ECF No. 538 at 51 n.21 (W.D. Wis. Sep. 21. 2020) ("[I]t is this court's view that local election officials should generally err toward counting otherwise legitimate absentee ballots lacking a definitive postmark if received by mail after election day but no later than November 9, 2020, as long as the ballot is signed and witnessed on or before November 3, 2020, unless there is some reason to believe that the ballot was actually placed in the mail after election day.").

19

In short, the New Jersey postmark presumption, like other similar postmark presumptions, is wholly consistent with federal law because it merely sets a standard for election officials to determine whether ballots were timely cast. *See, e.g.*, Cal. Elec. Code § 4103(b)(2); 10 Ill. Comp. Stat. 5/19-8(c); Md. Code Regs. 33.11.03.08(3)(b)(ii); Wash. Rev. Code § 29A.40.110(4). The postmark presumption does not conflict with any federal law and is not preempted. Count II should be dismissed.

### B. Counts III and IV should be dismissed because the asserted constitutional violations are not cognizable.

Counts III and IV assert claims based on Plaintiffs' constitutional rights to vote and to equal protection. Neither claim is legally viable, and both claims should be dismissed.

### 1. Vote dilution based on the potential for voter fraud is not a cognizable claim.

Plaintiffs contend the Election Law, by requiring New Jersey to "mail[] ballots to all active voters" "facilitates fraud and other illegitimate voting practices" which will "inevitabl[y]" lead to "voter fraud and other ineligible voting," diluting their members' votes and violating their right to vote. Am. Compl. at ¶¶ 119-21. Vote dilution based on the potential for voter fraud, however, is not a cognizable claim. *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406–07 (E.D. Pa. 2016) (finding plaintiffs' "vote-dilution theory is based on speculation"); *see also*

*Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011) (rejecting allegations that showed, "at most, a single instance of vote dilution and not an election process that has reached the point of patent and fundamental unfairness" (internal quotation marks omitted)); *Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973) (holding no federal cause of action for vote dilution based on purported voter fraud or election irregularities); *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970) (same); *Paher I*, 2020 WL 2089813, at *6–7 (same). That is because "[t]he Constitution is not an election fraud statute," *Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (quoting *Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)), and does not support claims "premised on potential harm in the form of vote dilution caused by" election processes that Plaintiffs dislike, *id.* at 1033.

Plaintiffs' citations to dicta from *Reynolds v. Sims*, 377 U.S. 533 (1964), *Baker v. Carr*, 369 U.S. 186 (1962), and *Anderson v. United States*, 417 U.S. 211, 226–27 (1974)), do nothing to support this claim. To be sure, vote dilution can, in certain circumstances, unconstitutionally impinge the right to vote—namely, when the law systematically or invidiously devalues one community's votes as compared to otherwise similarly situated voters. But Plaintiffs' cited cases analyze only vote dilution claims as they relate to apportionment litigation or individual criminal liability. *Reynolds*, 377 U.S. at 567–68 (involving a challenge to unequally

apportioned voting districts); *Anderson,* 417 U.S. at 226–27 (discussing vote dilution as it relates to a conviction for violating 18 U.S.C. § 241 by conspiring to perpetrate voter fraud); *see also Baker*, 369 U.S. at 207–08 (challenging apportionment by residents of disfavored counties); *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) ("Infringements of voting rights found to have risen to a constitutional level include dilution of votes *by reason of malapportioned voting districts or weighted voting systems . . . .*") (emphasis added).

Plaintiffs cite nothing that would support a finding that a vote dilution claim is cognizable based on nothing more than Plaintiffs' concerns that invalid ballots *might* be cast under the lawful elections enacted by a state. Moreover, New Jersey's decision to mail a ballot to all active voters in New Jersey does not favor one community's votes over another. *See Short v. Brown*, 893 F.3d 671, 678 (9th Cir. 2018) (rejecting vote dilution claim based on an improper reading of *Reynolds*, which "stand[s] for something narrower: that a state may not *allocate representation differently* based on a voter's county of residence"). Each registered New Jersey voter, regardless of location within the state, can choose to vote using the mail in ballot or vote in person at their usual polling place. The Election Law, in fact, facilitates voting during the pandemic by providing voters with a method to cast their ballot if they are unable to vote in person on election day for health, work, lack of transportation or other reasons. *See Short*, 893 F.3d at 677–78 ("Nor have the

appellants cited any authority explaining how a law that makes it easier to vote would violate the Constitution.").

There is simply no authority for transmogrifying the vote dilution line of cases into a weapon that may be used to make it more difficult for millions of citizens to vote, based entirely on unfounded and speculative fears of voter fraud. *Cf. Short v. Brown*, 893 F.3d 671, 677–78 (9th Cir. 2018) ("Nor have the appellants cited any authority explaining how a law that makes it easier to vote would violate the Constitution."). To the contrary, courts have routinely—and appropriately—rejected such efforts. *See Ritchie*, 720 F.3d at 1031–32 (affirming Rule 12(b)(6) dismissal of vote dilution claim); *see also Cortés*, 218 F. Supp. 3d at 406–07 (rejecting claim of vote dilution "based on speculation that fraudulent voters may be casting ballots elsewhere in the" state on motion for preliminary injunction). Because Plaintiffs have failed to allege facts that give rise to a plausible claim for relief, or even alleged a cognizable legal theory, Count III should be dismissed.

### 2. Count IV fails to identify any cognizable claim.

Plaintiffs' final claim is similarly unsustainably speculative, and in any event, the relief Plaintiffs seek is inappropriate. Count IV challenges the Election Law's requirement that in-person voters must vote provisionally. Am. Compl. ¶ 128. Plaintiffs project that enough voters will forego their mail ballots and opt to vote provisionally such that county officials will be overwhelmed. *Id*. at ¶¶ 131-135.

Plaintiffs further speculate that counties will be forced to adopt alternative "arbitrary and varying procedures" to process the provisional ballots. *Id.* at ¶¶ 133-134. As is evident from the face of the Amended Complaint, this claim relies on layers upon layers of speculation; there is nothing to suggest that counties are unprepared for provisional voting and there is certainly nothing to suggest that counties will discard already established procedures for handling provisional ballots. Plaintiffs' concern is based not on plausible inferences from well-pleaded factual allegations, but on conclusory assertions and conjecture. That defect alone warrants dismissal for failure to state a claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs' reliance on *Bush v. Gore* is inapposite. Am. Compl. at ¶ 126. *Bush v. Gore* occurred *after* the disputed 2000 presidential election and *after* the Florida Supreme Court ordered a "statewide recount with minimal procedural safeguards." 531 U.S. 98, 109 (2000) (per curium). The same is true of *League of Women Voters of Ohio v. Brunner*, which applied *Bush v. Gore* to the circumstances of a past election. 548 F.3d 463, 477–78 (6th Cir. 2008). Unlike the circumstances in those cases, Plaintiffs have not and cannot point to constitutionally deficient procedural safeguards or allege that any ballot has been or will be arbitrarily rejected. In-person voting has not occurred, Am. Compl. ¶¶ 128-29, provisional ballots have not been counted, *id.* ¶¶ 131-32, and the supposed county-specific "alternative procedures for

processing provisional ballots" that Plaintiffs imagine, *id.* ¶ 133, do not exist. What does exist—the Election Law itself—provides a uniform and safe opportunity for all registered voters to vote. Am. Compl. at ¶ 64, 73.

Setting aside Plaintiffs' failure to plausibly state a claim, they also seek irrelevant and harmful relief. Plaintiffs claim they are concerned about potential voter fraud, yet New Jersey's policy ensures that each voter may only vote once. That is, under the system devised by the Election Law, if a voter submitted a mail ballot and attempted to also vote provisionally, the second ballot would not be counted, *protecting* New Jersey from the very ills about which Plaintiffs warn. Plaintiffs also appear to argue that voters will suffer unequally if there is a surge in provisional voting this November. However, instead of seeking relief to lessen the alleged burden on voters, Plaintiffs instead seek to burden voters even more by removing the mail-voting option adopted by the Election Law, potentially disenfranchising thousands. Plaintiffs may disagree with the policy approach adopted by the State, but their lawsuit fails to state any cognizable constitutional claim. At most, Plaintiffs' requested relief makes voting harder for voters, and at the very least it belies common sense.

## CONCLUSION

For the foregoing reasons, DCCC respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety.

DATED:  October 2, 2020

By:  s/ Rajiv D. Parikh _____

**GENOVA BURNS LLC**
Angelo J. Genova
Rajiv D. Parikh
Michael Mondelli
AGenova@genovaburns.com
RParikh@genovaburns.com
mmondelli@genovaburns.com
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112

Marc E. Elias (*pro hac vice*)
Emily R. Brailey (*pro hac vice*)
MElias@perkinscoie.com
EBrailey@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Fax: 202.654.6211

Kevin J. Hamilton (*pro hac vice*)
KHamilton@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Sarah R. Gonski (*pro hac vice*)
SGonski@perkinscoie.com
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000

Fax: 602.648.7037

Mary N. Beall (*pro hac vice*)
MBeall@perkinscoie.com
**PERKINS COIE LLP**
33 E. Main St., Ste 201
Madison, WI 53703-3095
Telephone: 606.294.4001
Fax: 608.663.7499

*Attorneys for DCCC*